UNITED STATES of America, Plaintiff-Appellant,

v.

Ronald Eric RAMOS, Defendant-Appellee.

No. 76–2162.

United States Court of Appeals, Ninth Circuit.

July 29, 1977.

Eric J. Swenson, Asst. U. S. Atty., San Francisco, Cal., argued, for plaintiff-appellant.

Gregory L. Quintana, William J. Murphy, San Francisco, Cal., argued, for defendant-appellee.

Before WRIGHT and TRASK, Circuit Judges, and PALMIERI,* District Judge.

TRASK, Circuit Judge:

On February 4, 1976, appellee was indicted for allegedly violating 18 U.S.C. § 659, theft from a foreign shipment (count one) and possession of goods known to have been stolen from a foreign shipment (count two). Appellee pleaded not guilty, and a jury trial was held between April 19, and April 23, 1976. Appellee was found guilty on both counts of the indictment. However, on April 29, 1976, after hearing oral argument on appellee's motion for a judgment of acquittal (Rule 29, Fed.R.Crim.P.), the trial court granted the motion and dismissed the indictment. This appeal by the government followed.

At the outset we note that this appeal does not violate the double jeopardy clause of the Constitution. Under 18 U.S.C. § 3731 and *United States v. Wilson,* 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975), when the jury returns a verdict of guilty, but the trial court thereafter enters a judgment of acquittal, an appeal is permitted. The Supreme Court specifically observed in *Wilson* that the paramount danger which the double jeopardy clause protects against is that of multiple trials. *Id.* at 344, 95 S.Ct. 1013. This danger is not present in the instant case. A reversal of the trial court's ruling on appellee's motion for a judgment of acquittal would not grant to the government a second chance to convict appellee or subject appellee to multiple prosecutions. A reversal here would merely require that the jury verdict of guilty be reinstated. Therefore, we find that under the Supreme Court's ruling in *Wilson* we may rightfully hear this appeal. *See United States v. Burroughs,* 537 F.2d 1156 (4th Cir. 1976).

The government's main contention on appeal is that there was sufficient evidence upon which the jury could have based their verdict that appellee was guilty beyond a reasonable doubt. We agree.

In *United States v. Nelson,* 419 F.2d 1237, 1241 (9th Cir. 1969), we observed that "[t]he test to be applied by the trial court in deciding a motion for acquittal in a criminal case, and the test to be applied by this court in reviewing that decision, are, as a practical matter, identical." First, the evidence must be viewed in the light most favorable to the government; and second, the reviewing court must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict. *Id.* In brief, the reviewing court must determine:

---

* Honorable Edmund L. Palmieri, Senior United States District Judge, Southern District of New York, sitting by designation.

"whether the evidence, considered most favorably to the government, was such as to permit a rational conclusion by the jury that the accused was guilty beyond a reasonable doubt." *Id.* at 1242.

Considering the evidence most favorably to the government, the following facts are apparent:

(1) A container of coffee was stolen from the Novo International yard on November 7, 1975, after 5:22 p. m.

(2) The coffee was in foreign commerce at the time it was stolen and had a value in excess of $100.00.

(3) Government witness Stella paid $10,-000 for the stolen coffee which arrived at his warehouse around 6:00 p. m., November 7, 1975. The $10,000 was paid to government witness Capizano.

(4) Most people who worked at the Novo yard knew the coffee was in the yard.

(5) Three Novo drivers plus not more than three other employees at Novo had keys to the lock on the main gate of the Novo yard.

(6) There was no evidence of any forced entry into the Novo yard.

(7) To steal the coffee would have necessitated hooking up a tractor to the container on the trailer and would have taken even an experienced truck driver nearly a half an hour to hook up the container and drive it to Stella's warehouse.

On the basis of the above known facts, the jury could have easily found beyond a reasonable doubt that the coffee was stolen on the date charged by a person familiar with the Novo operations and familiar with the operation of large tractor-trailer vehicles. The question that remains is the identity of the thief.

To support the finding that appellee was, in fact, the person who stole the coffee, the jury had before it the following additional evidence:

(1) Appellee was present at the Novo yard on the date charged, was familiar with the Novo operations, and is familiar with the operation of large tractor-trailer vehicles.

(2) Upon receiving a phone call from Capizano at 6:19 p. m. on November 7, and being advised that the coffee had been delivered to his warehouse, Stella questioned, "Is the 'Rabbit' still there?"

(3) Appellee was known by everyone as the "Rabbit." This was confirmed by appellee himself.

(4) In answer to the question, "From whom did you purchase the coffee," Stella answered, after discussion between counsel and the court, "The coffee came from the 'Rabbit.' " Stella then indicated that he had seen the "Rabbit" on only one occasion, not November 7, and proceeded to identify appellee as the "Rabbit."

(5) The jury also had the detailed description of the method of payment for the November 7 coffee which, because of the nature of the payment, brought into evidence an October 21 coffee theft. Stella had paid $40 per bag for 250 bags of November 7 coffee, for a total of $10,000. Testimony and documentary evidence indicated, however, that Stella paid only $7,700 for the coffee. The $2,300 difference was explained by evidence of damage to Stella's warehouse as a result of a tractor-trailer being backed into it on October 21, causing $2,300 in damage. Stella explained that this damage was done by the "Rabbit" and that Capizano, Stella, and the "Rabbit" unloaded the October 21 coffee.

On the basis of the above evidence, other facts existing in the record, and commonsensical inferences drawn from the available evidence, we hold that the jury could easily have found beyond a reasonable doubt that appellee was the thief who had stolen the November 7 coffee.

In ruling on appellee's motion for a judgment of acquittal, the trial court correctly observed that it was obligated to "take the

evidence in the light most favorable to the Government." Nevertheless, the trial court, in granting appellee's motion, developed at length the testimony of appellee's alibi witnesses. Given this testimony, the court below observed that "Mr. Ramos would not have had time to leave work, steal the coffee, take it to Mr. Stella's warehouse, meet his wife for his ride home, and get home in time to teach his Kung Fu class." Based in part on this testimony, the trial court concluded that "a reasonable juror [would] have a reasonable doubt as to the guilt of Mr. Ramos."

It is obvious that the jury would have found appellee "not guilty" if it had believed the testimony of the alibi witnesses. It is equally obvious that the jury discredited that testimony because it found appellee "guilty." By reevaluating the alibi testimony, the trial court ignored the evaluation of that testimony made by the jury, and hence failed to follow the standard set forth in *United States v. Nelson, supra.*

After applying the *Nelson* standard to the facts of this case we conclude that the jury had sufficient evidence presented to it to find appellee guilty as charged beyond a reasonable doubt. Therefore, we reverse the ruling of the trial court granting appellee's motion for a judgment of acquittal, and we remand the case to the trial court with instructions that the jury verdict be reinstated and that judgment on the verdict be entered accordingly.