9 F.3d 1554
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Ralph D'AMBROSIO, Defendant-Appellant.
 No. 92-10526.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Aug. 30, 1993.
Decided Oct. 14, 1993.
 
 1
 Before: D.W. NELSON and NORRIS, Circuit Judges, and BELLONI,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 A jury found defendant James Ralph D'Ambrosio guilty of bank robbery in violation of 18 U.S.C. § 2113(a). On appeal, defendant argues that there was insufficient identification evidence to sustain the verdict. We affirm.
 
 
 4
 On March 1, 1990, the Santa Barbara Savings and Loan was robbed. The robber, donning a ski mask, was filmed by bank cameras. An anonymous tip led the FBI to investigate defendant as a suspect for the robbery. Pursuant to consent searches, law enforcement officials found a pair of blue jeans, black shoes, and combs in defendant's suitcase and room. The trial evidence consisted of a voice identification "line-up," a comparison between the clothes of the robber on film and defendant's clothes, a physical identification of defendant's eyes made by a teller who saw the robber briefly before he put on his mask, and the testimony of defendant's former sister-in-law that defendant acted "hyper."
 
 
 5
 * We review the jury's verdict with great deference. Viewing the entire evidence in the light most favorable to the government, if any rational trier of fact could have found the elements of the crime beyond a reasonable doubt, we must affirm. See United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Moreover, circumstantial evidence and inferences drawn therefrom may be sufficient to convict. See United States v. Hernandez, 876 F.2d 774, 777 (9th Cir.), cert. denied, 493 U.S. 863 (1989).
 
 
 6
 The evidence breaks down to three major types: voice identification, physical identification, and clothing comparison.
 
 
 7
 * Eight tellers testified that they participated in a voice identification line-up 21 days after the robbery. By all accounts, the robbery lasted no more than 5 minutes. Five voices were featured in the line-up, and voice # 4 was defendant's.
 
 
 8
 At the line-up, four tellers identified # 4 as the most likely voice. Of the four tellers, three said that they experienced a strong emotional reaction upon hearing voice # 4. Four tellers did not identify # 4. Three of them said that none of the voices stood out distinctively as the robber's. One teller testified that voice # 5 seemed most likely of the five, although she was uncertain whether # 5 was in fact the robber. See Tr. at 138. She also thought that voice # 4 was definitely not the robber's voice. See Tr. at 144.
 
 B
 
 9
 Teller Helen Thompson briefly saw the robber before he pulled down his ski mask. At trial, she testified that the robber's "eyes" stood out. Tr. at 163. She also claimed that she was certain by looking at defendant's eyes that he was the robber.[1] It is important to note, however, that Helen Thompson picked out someone different from the defendant in a photo spread, conducted soon after the robbery. Moreover, at defendant's first trial--which resulted in a hung jury--Helen Thompson made no mention of the robber's eyes, Tr. at 175, and could not definitely identify defendant as the robber.
 
 C
 
 10
 The government's expert witness from the Federal Bureau of Investigation testified that the blue jeans found in defendant's possession were the same jeans that the masked robber wore during the robbery, as seen on the bank's video film. In reaching his conclusion, the expert noted similarities in wear marks on the inside seam, Tr. 255, a crease down the back of a leg, Tr. at 256, marks on the base of the right pocket, the left rear pocket, Tr. at 259, a series of faded points on the jeans, Tr. at 261, and a fold on the bottom of the jeans, Tr. at 264. Emphasizing the totality of the similarities, the expert concluded that they were the same jeans. Tr. at 296.
 
 
 11
 The defendant's sole witness was an expert who admitted that defendant's jeans and the jeans worn by the robber were very similar. Indeed, he admitted that there was not one detail that showed the jeans to be different. Tr. at 339-40. However, he said that there was insufficient scientific research done in the field of clothing comparison through photographs to state with any confidence that the jeans were the same.[2]
 
 II
 
 12
 Although the evidence on which defendant was convicted was circumstantial, the standard of review controls the outcome of this case. We must "respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict." See United States v. Gillock, 886 F.2d 220, 222 (9th Cir.1989) (quoting United States v. Ramos, 558 F.2d 545, 546 (9th Cir.1977)) (per curiam).
 
 
 13
 When the voice identification and physical identification is coupled with the expert testimony making a detailed comparison of the clothing, we believe there is ample evidence to sustain the verdict. "[T]he evidence need not exclude every hypothesis except that of guilt. The issue merely is whether the trier of fact could reasonably arrive at its conclusion." United States v. Lester, 749 F.2d 1288, 1296 (9th Cir.1984). Thus, the conviction is AFFIRMED.
 
 
 
 *
 Honorable Robert C. Belloni, Senior District Judge for the District of Oregon, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 "[E]very time I close my eyes, I can see those same eyes as the eyes that walked in the bank that day. I know that's the same eyes." Tr. at 176
 
 
 [2]
 The prosecution also entered defendant's black shoes into evidence. Its own expert witness, however, testified only that the shoes seemed to be of the same type worn by the robber