26 F.3d 133
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Antonio CARDONA-URBINA; Elizabeth Torres, Defendants-Appellants.
 Nos. 93-10266, 93-10280.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 10, 1994.
Decided June 14, 1994.
 
 Before: POOLE, BEEZER and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellants Cardona-Urbina and Torres appeal in forma pauperis their convictions for failing to report the transportation of monetary instruments while crossing the United States-Mexico border, in violation of 31 U.S.C. Secs. 5316 and 5322. We affirm.
 
 
 3
 * On August 26, 1992, the appellants, Antonio Cardona-Urbina, and his common-law wife, Elizabeth Torres, were stopped at the port of entry near Nogales, Arizona. Edward Eisenhauer, a United States Customs inspector, speaking Spanish, told the appellants that federal law required them to report any currency they were taking to Mexico if the amount exceeded $10,000. Eisenhauer testified that the couple indicated they understood the law. He also testified that both denied having currency exceeding $10,000.
 
 
 4
 Eisenhauer testified that when Torres exited the truck, she suspiciously placed her purse on the seat. The agent examined the purse for weapons. Inside, he found $24,000 in cash, shrink-wrapped in four $6,000 bundles. He found an additional $707.00 on Cardona-Urbina. According to testimony at trial, Cardona-Urbina later told another Customs agent that he did not declare the money because he was tired and did not have the time.
 
 
 5
 After a two-day trial, both appellants were convicted of failing to report the transportation of monetary instruments in violation of 31 U.S.C. Secs. 5316 and 5322.
 
 II
 
 6
 The appellants first claim that the evidence adduced at trial was insufficient to sustain their convictions. In reviewing the sufficiency of the evidence, we view the evidence in the light most favorable to the government, and will uphold the jury's verdict if a rational jury could have found the essential elements of the crime proved beyond a reasonable doubt. United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992).
 
 
 7
 The appellants argue that the evidence did not establish the necessary elements of the offense in 31 U.S.C. Sec. 5316(a). Under Sec. 5316(a), the government must prove three elements: (1) that the defendant knew he was transporting over $10,000; (2) that he knew a report of the money had to be filed; and (3) that he willfully failed to file such a report. See Manual of Model Criminal Jury Instruction for the Ninth Circuit Sec. 9.07 (1992); Cf. United States v. Alzate-Restreppo, 890 F.2d 1061, 1064 (9th Cir.1989) (listing first two elements but not third element). We address separately Cardona-Urbina's and Torres' arguments regarding the sufficiency of the evidence.
 
 
 8
 * Cardona-Urbina argues that the government failed to establish the second element: "actual knowledge" of the reporting requirement. See United States v. Granda, 565 F.2d 922, 926 (9th Cir.1978) (cited with approval in United States v. Chen, 605 F.2d 433, 434 (9th Cir.1979). Actual knowledge cannot be proved unless the government (1) took "affirmative steps" to make the law's requirements known to travelers and (2) the defendant indicated that he or she understood the law's requirements. See Chen, 605 F.2d at 435. Cardona-Urbina contends that the government failed to meet either condition.
 
 
 9
 Cardona-Urbina contends that the customs inspector failed to take "affirmative steps" to inform him because he was not given a written reporting form with instructions. It is true that customs officials frequently provide reporting forms to travellers, and the signing of these forms can be proof of the traveller's knowledge of the law. See, e.g., United States v. Gomez-Osorio, 957 F.2d 636, 641 (9th Cir.1992). However, the provision of a form is not required, as long as the law is adequately explained through verbal or other means. See United States v. Berisha, 925 F.2d 791, 795-96 (5th Cir.1991) (explanation sufficient when given by public-address announcements, warning signs).
 
 
 10
 In this case, a verbal explanation was made. Eisenhauer testified that he told the appellants:
 
 
 11
 The law is that you are able to export as much legal money as you get from the United States, but the requirement of the law is that you declare it to Customs of the United States, and that you write out a form in that declaration, and that is the law. If you do that, you have complied with all exports.
 
 
 12
 This explanation was both accurate and sufficient.[1]
 
 
 13
 Cardona-Urbina argues he did not understand Inspector Eisenhauer's verbal explanation. He points to evidence showing that he gathered building receipts from the truck[2] after the law was explained to him. However, the inspector testified that Cardona-Urbina responded, "Yeah," when asked if he understood the explanation. While there may be a conflict between Cardona-Urbina's statement and his subsequent actions, a rational jury could have decided to give more weight to Cardona-Urbina's statement that he understood the law. See United States v. Young, 573 F.2d 1137, 1139 (9th Cir.1978) (jury may resolve evidentiary conflicts and draw reasonable inferences from proven facts); United States v. Ramos, 558 F.2d 545, 546 (9th Cir.1977) (conflicts in evidence are resolved in favor of verdict). The evidence was sufficient to establish Cardona-Urbina's knowledge.
 
 
 14
 Cardona-Urbina next argues that the evidence was insufficient to establish the third element: willfulness in failing to report the money. "Willfulness" is the specific intent to break the law. See Chen, 605 F.2d at 435-36. He argues that customs officials did not give him sufficient time to declare the money. He also argues that because the money was contained in a purse in plain view, he did not willfully seek to break the law. He notes that as soon as the money was discovered he claimed ownership to it.
 
 
 15
 We reject Cardona-Urbina's argument. The testimony indicated that when asked if he had $10,000 or more in checks or cash, Cardona-Urbina replied in Spanish: "No, I don't have it." Testimony showed that Cardona-Urbina gave this reply after the reporting law was explained to him, and after Cardona-Urbina claimed to understand the law. This evidence was sufficient for a rational jury to find that he intended to break the law.[3]
 
 B
 
 16
 Torres argues that the government failed to establish the first element of the crime: knowledge that the amount of money exceeded $10,000. She argues that there was no evidence offered by the government indicating that she knew, or should have known, the amount of money in her purse. The government argues that her act of "nervously grabbing the purse" as she left the truck indicates that she knew she had more than $10,000. There also was testimony that, during her detention, Torres admitted knowing she was supposed to declare the money. The money also was in her possession. These facts are sufficient for a rational jury to infer that Torres knew how much money she was carrying.
 
 
 17
 Torres next contends that the government failed to prove the second element: that she knew about the law's requirements. She argues that the evidence against her--testimony by Eisenhauer that she nodded her head in the affirmative when she was asked if she understood the law--is insufficient to establish knowledge beyond a reasonable doubt. We reject Torres' argument. The record included testimony that Torres admitted she had known about reporting requirement. This is sufficient for a rational jury to conclude that Torres knew the requirements of the law.
 
 
 18
 Torres also argues that the third element--willful failure to file a report--was not sufficiently proved, because she was not directly asked if she had more than $10,000. However, there is sufficient evidence for a rational jury to establish the element of willfulness. Inspector Eisenhauer testified that after he asked Cardona-Urbina whether he had more than $10,000, and after Cardona-Urbina said he did not, the inspector looked at Torres and she shook her head in the negative. This evidence supports the inference that Torres had an opportunity to declare the money but specifically intended to avoid doing so.
 
 III
 
 19
 Torres next argues that the facts were insufficient to justify giving an aiding and abetting instruction to the jury. We review for abuse of discretion a district court's decision that a factual basis exists for giving a particular jury instruction. United States v. Taren-Palma, 997 F.2d 525, 530 (9th Cir.1993).
 
 
 20
 In challenging the district court's jury instruction, Torres repeats the same arguments that she employed in challenging the sufficiency of the evidence. To justify an aiding and abetting instruction, the government must show that the defendant associated with the venture, that the defendant intends by his actions to make the venture succeed. United States v. Sanchez-Mata, 925 F.2d 1166, 1169 (9th Cir.1993). An abettor's intent may be inferred from the attendant facts and circumstances. United States v. Cloud, 872 F.2d 846, 851 (9th Cir.1989). The evidence showed that the $24,000 was in her possession, and that she shook her head no when asked if she had more than $10,000. This evidence supports the inference that Torres aided and abetted her husband's failure to file the report. The court did not abuse its discretion in giving the aiding and abetting instruction.
 
 IV
 
 21
 Torres argues that the district court erred by permitting Eisenhauer to testify that he knew he had a "violation" when he discovered the money. We review for abuse of discretion a district court's rulings on the admissibility of evidence.[4] United States v. Heffington, 952 F.2d 275, 280 (9th Cir.1991).
 
 
 22
 The district court did not abuse its discretion by permitting the testimony. The rule is that a witness may not give a direct opinion on a defendant's guilt or innocence, because such testimony has the potential to usurp the ultimate fact-finding role of the jury. See United States v. Kinsey, 843 F.2d 383, 388 (9th Cir.1988). However, we have held that opinions going to the ultimate facts may be admitted where the value of the opinion outweighs the prejudice inherent in such opinions. See United States v. Espinosa, 827 F.2d 604, 612 (9th Cir.1987). In this case, Eisenhauer's use of the word "violation" appears to fall under this exception. Eisenhauer used the word when asked by defense counsel to explain why, after discovering the money, he did not provide a reporting form to the defendants. He responded that he thought he already had a "violation." We have difficulty imagining how the witness could have answered the question without expressing his opinion of the defendants' culpability. The district court did not abuse its discretion in allowing the testimony, especially since it came in response to a question from defense counsel. The value of Eisenhauer's explanation clearly outweighed any potential for prejudice.
 
 
 23
 For the reasons stated above, we AFFIRM the convictions.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Cardona-Urbina argues that Eisenhauer incorrectly explained the law. Eisenhauer testified that he asked the defendant whether he understood the "law for export to the United States of $10,000 or more ...?" We refuse to infer a lack of knowledge based merely on this testimony. As the quoted passage indicates, Eisenhauer also testified that he explained that money coming "from" the United States had to be reported. In light of this latter testimony, a jury could have found knowledge by Cardona-Urbina
 
 
 [2]
 Cardona-Urbina's truck was filled with building materials; he contends he was travelling to Mexico to build a house
 
 
 [3]
 Cardona-Urbina's "no" response does not entitle him to the "exculpatory no" exception. The "exculpatory no" doctrine protects travellers who may lie and say "no" on the mistaken belief that merely transporting more than $10,000 is itself illegal and that such money will be confiscated if found. Thus, specific intent to break the law will not be found if Customs fails to disabuse the defendant of the potential belief that transporting more than $10,000 is itself illegal. Berisha, 925 F.2d at 795 n. 11. Cf. Chen, 605 F.2d at 435-36. In this case, the Customs inspector told Cardona-Urbina that it was not against the law to take more than $10,000 out of the country. The inspector testified he said: "The law is that you are able to export as much legal money as you get from the United States, but the requirement of the law is that you declare it ..."
 
 
 [4]
 The government argues that the panel should apply a "plain error" standard of review because Torres, although she objected to use of the word "violation," did not object at the first use of the word. However, this circuit does not judge whether an objection is "contemporaneous" by temporal measure, but by whether the district court "had ample opportunity" to determine the admissability of the evidence. See United States v. Palmer, 3 F.3d 300, 304 (9th Cir.1993). Cf. Williams v. Zahradnick, 632 F.2d 353, 358 (4th Cir.1980) (issue preserved for appeal when defendant failed to object to first improper reference but objected on later occasions). The court in this case had "ample opportunity" after the defendant objected at least twice. Therefore, an abuse of discretion standard is appropriate here