131 F.3d 149
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas P. McCABE, Defendant-Appellant.
 No. 96-30092.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 6, 1997.
Submission Vacated April 18, 1997.
Resubmitted May 12, 1997.
Decided Nov. 26, 1997.
 
 1
 Appeal from the United States District Court for the District of Montana, No. CR-95-48-GF-PGH; Paul G. Hatfield, District Judge, Presiding.
 
 
 2
 BEFORE: CANBY and TASHIMA, Circuit Judges, and SILVER,** District Judge.
 
 
 3
 MEMORANDUM*
 
 SILVER, District Judge:
 
 4
 Thomas P. McCabe was convicted cf aggravated sexual abuse and sexual abuse of a minor occurring on an Indian reservation in violation of 18 U.S.C. §§ 1153, 2241, 2243. McCabe now appeals his conviction and sentence on the grounds that: (1) the district court obstructed defense counsel's cross-examination of government witnesses and castigated defense counsel in the presence of the jury; (2) the evidence proffered was insufficient to sustain a conviction; (3) the district court erred by allowing the victim's therapist to testify regarding the victim's out-of-court statements pursuant to the medical treatment and diagnosis exception to the hearsay rule; (4) the district court erred by enhancing his sentence based on conduct for which McCabe was acquitted; and (5) the district court erred by not providing a specific unanimity instruction to the jury. We affirm.
 
 BACKGROUND
 
 5
 On August 13, 1995, A.E. and D.J., McCabe's cousin and nephew, respectively, were in the company of McCabe at the Katherine Ereaux residence on the Fort Belknap Indian Reservation in Montana. At some point during that day, McCabe asked A.E. to call E.R.B., a fifteen-year old female. McCabe, who was 35 years old, and A.E. picked up E.R.B. on a road near E.R.B.'s home. McCabe was carrying a gun in his truck. McCabe and his passengers returned to the Katherine Ereaux residence.
 
 
 6
 After A.E. and E.R.B. went inside and down to the basement, E.R.B. came outside and got into McCabe's truck. E.R.B. thought A.E. was getting into the truck as well. A.E. tried to get E.R.B. out of McCabe's truck, but McCabe grabbed E.R.B.'s left arm, reached around E.R.B, slammed the passenger door, and sped off.
 
 
 7
 McCabe took E.R.B. to the back roads near the King residence. McCabe forced E.R.B. to have sex with him. After McCabe sexually assaulted E.R.B., he grabbed her arm and injected her with cocaine.
 
 
 8
 Next, McCabe drove E.R.B. to a place across the highway from the Ereaux residence that E.R.B. described as a slope with some trees. E.R.B. testified without contradiction that this location was within the boundaries of the Fort Belknap Indian Reservation. McCabe sexually assaulted E.R.B. a second time at this location. McCabe again injected E.R.B. with drugs.
 
 
 9
 Thereafter, McCabe and E.R.B. started to drive toward the Ereaux residence. At or near the residence they spotted a police car. When McCabe saw the police car, he told E.R.B. to duck her head to stay out of sight. E.R.B. ducked down until she was kneeling on the floor of the pickup. McCabe did not stop at the Ereaux residence. Instead, he drove to the Moore residence up the road and across from the Ereaux residence. McCabe told E.R.B. to get into a camper that was in the yard of the Moore residence and to stay down. While E.R.B. was in the camper, a police officer arrived at the residence to question McCabe. The officer asked McCabe if he was with or had seen E.R.B. McCabe answered no. E.R.B. stayed in the camper until McCabe took her out of it.
 
 
 10
 McCabe then drove to a canyon past the Ereaux residence. E.R.B. testified that the canyon is on the Fort Belknap Indian Reservation. McCabe sexually assaulted E.R.B. a third time. While McCabe was asleep, he had a gun in his hand. McCabe and E.R.B. stayed at the canyon for the rest of the night.
 
 
 11
 The next morning, McCabe drove E.R.B. to a spot near her home and dropped her off. During the ride from the canyon to her home, McCabe instructed E.R.B. to keep her head down so that the police would not see her in his truck. Before McCabe let E.R.B. get out of the truck, he threatened to kill her.
 
 
 12
 E.R.B. was examined by Dr. Allen Thorne on August 14, 1995. Dr. Thorne performed a rape kit examination. Dr. Thorne observed a dried secretion on E.R.B.'s inner thighs, bruising on E.R.B.'s left arm, and needle marks on both arms near the crease of the elbow and concluded there was evidence of recent sexual activity. The bruise on E.R.B.'s left arm and the needle marks on both arms were also observed by a medical technologist who drew blood from E.R.B. on August 14, 1995.
 
 
 13
 The contents of the rape kit were examined at the FBI laboratory and DNA testing was conducted. The DNA extracted from the sperm sample taken from E.R.B.'s vagina and the DNA extracted from a blood sample obtained from McCabe were compared and McCabe was not excluded as a possible donor of the sperm. The probability of finding another Native American male who could have deposited the sperm in E.R.B.'s vagina was calculated at 1 in 19,000. A forensic scientist from the FBI laboratory testified that though he would expect to eliminate 99.99 percent of all possible donors, McCabe could not be eliminated.
 
 
 14
 On June 22, 1995, McCabe was indicted for aggravated sexual abuse in violation of 18 U.S.C. §§ 1153 & 2241 (Count I), sexual abuse of a minor in violation of 18 U.S.C. §§ 1153 & 2243 (Count II), distribution of cocaine in violation of 21 U.S.C. §§ 841(a)(1) & 859 (Counts III-V), and using or carrying a firearm during and in relation to a crime of violence or a drug trafficking crime in violation of 18 U.S.C. § 924(c) (Counts VI-VII). The victim of both sexual abuse charges was 15-year-old E.R.B.
 
 
 15
 After a trial held November 27-29, 1995, the jury found McCabe guilty on the sexual abuse counts (Counts I-II) and acquitted McCabe on the cocaine distribution counts (Counts III-V) and the firearm counts (Counts VI-VII). The presentence report calculated McCabe's criminal history category at I and his total offense level at 35.[1] His Guidelines range was 168 to 210 months. McCabe was sentenced to a term of 168 months imprisonment and five years supervised release. McCabe filed a timely notice of appeal.
 
 ANALYSIS
 
 16
 I. Interruptions of Counsel and Restrictions on the Scope of Cross-Examination
 
 
 17
 McCabe contends that the district court repeatedly interrupted defense counsel during his opening statement and cross-examination of government witnesses and admonished defense counsel for acting improperly when he acted properly. McCabe also contends that the district court improperly restricted defense counsel's attempt to conduct effective cross-examination of the government's witnesses in violation of his Sixth Amendment right to confront witnesses. Further, McCabe contends that the district court's bias in favor of the prosecution and against the defense denied McCabe's Fifth Amendment right to due process and his Sixth Amendment right to effective assistance of counsel.
 
 A. Opening Statement
 
 18
 McCabe complains of the district court's repeated interruptions of his opening statement. Although the district court did interrupt defense counsel three times during his opening statement, we find that the interruptions were proper.
 
 
 19
 The district court's motivation for interrupting defense counsel is plain. The interruptions occurred because the opening statement went beyond the appropriate scope of an opening statement. To illustrate, defense counsel was interrupted as follows:
 
 
 20
 [MR. GALLAGHER-DEFENSE COUNSEL:]
 
 
 21
 Think back, if you will, to maybe your fifth grade in school. Sometime during your elementary school, you heard about the Salem witch trials. And you heard that in Salem, Massachusetts, there were a number of people that were burned at the stake. But there's one story that stands out, and that's the story where a little woman, an old woman, who was by extraction Jamaican, was accused by three juveniles of being a witch. She had a deformity. She was a little bit infirm. She was turned in. And these three juveniles, who had themselves been involved in some activity that the Puritans didn't like, blamed her: She made us do it, she made us leave our home, she made us break our vows. And they accused her of being a witch.
 
 
 22
 Three have accused Thomas McCabe, [A.E.], [D.J.], and [E.R.B.], three juveniles. They've said that he led them astray. The three girls in the Salem case had disobeyed their elders, and because of the hue and cry, when they said, this woman's a witch, she made us do it, they believed her and that woman was burned at the stake for a crime she never committed. And those three girls were later shown to have been lying.
 
 
 23
 So don't burn Thomas McCabe at the stake before you hear all the evidence. You may laugh now, but believe me, ladies and gentlemen, these kids are lying. The burden was on the old woman at Salem to show that she wasn't a witch.
 
 
 24
 THE COURT: All right, now let's--let's--
 
 
 25
 MR. GALLAGHER: The burden is not on Thomas McCabe to--
 
 
 26
 THE COURT: Let's stop that. Not only that, ladies and gentlemen, this is supposed to be opening statement and not final argument. And I insist that you do that.
 
 
 27
 Immediately following the opening statements, the district court and defense counsel had the following colloquy outside the presence of the jury:
 
 
 28
 MR. GALLAGHER: Should we wait for Mr. M[c]Cabe?
 
 
 29
 THE COURT: If you feel he should be. What I wanted to talk to you about is the opening statement.
 
 
 30
 MR. GALLAGHER: Very well, your honor. I mean, I don't think he has to be.
 
 
 31
 THE COURT: Okay. Over time, since you came, your opening statements--and you're not alone in this area, but they are more like closing argument than they are opening statement. And you and I have discussed this from time to time, and I get the impression that your approach, especially to that, is what can I get away with?
 
 
 32
 And what I want you to do for me is to find an essay, whatever, about what is a proper opening statement, and then if you would read it and send it to me, and I'll look at it. And I want to make sure that--maybe I'm wrong. It may turn out that all these years I've been suffering under the delusion that an opening statement is just to tell the jury where you're going in the trial, not final argument or not having to do with the Salem witches. All right?
 
 
 33
 MR. GALLAGHER: Very well, your honor.
 
 
 34
 Although McCabe contends in conclusory fashion that defense counsel did not do anything improper during the course of the trial, the transcript of defense counsel's opening statement and the colloquy thereafter demonstrate otherwise. Defense counsel's opening statement was argumentative, inflammatory, and prejudicial. "An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument." United States v. Dinitz, 424 U.S. 600, 612 (1976) (Burger, C.J., concurring). Opening statement is intended as an outline of a party's anticipated proof. Maxworthy v. Horn Elec. Serv., Inc., 452 F.2d 1141, 1143 (4th Cir.1972). Opening statement should not refer to matters that are not to be presented as evidence. United States v. Taren-Palma, 997 F.2d 525, 532 (9th Cir.1993), cert. denied, 511 U.S. 1071 (1994). The scope and extent of an opening statement is within the trial court's control. United States v. Hershenow, 680 F.2d 847, 857 (1st Cir.1982). The trial judge can exclude irrelevant facts and stop argument if it occurs. United States v. Zielie, 734 F.2d 1447, 1455 (11th Cir.1984), cert. denied, 469 U.S. 1189 (1985), and cert. denied, 469 U.S. 1216 (1985). The trial judge must "actively supervise the trial and, if necessary, reiterate instructions in the wake of prejudicial events." United States v. Tootick, 952 F.2d 1078, 1085 (9th Cir.1991). Taken as a whole, the district court's interruptions and instructions to the jury during defense counsel's opening statement were warranted.
 
 
 35
 B. Cross-Examination of D.J.
 
 
 36
 McCabe contends that the district court precluded defense counsel from cross-examining D.J. regarding his prior inconsistent statements to tribal investigators.[2] As an example, McCabe relies upon the following portion of the trial transcript:
 
 
 37
 Q Now, [D.J.], do you recall being interviewed by John Hutika of the Fort Belknap Tribe?
 
 
 38
 A Yeah.
 
 
 39
 Q Did you tell him that Mr. McCabe came into the house and woke both you and [A.E.] up?
 
 
 40
 A Yes.
 
 
 41
 MS. HARPER: Objection, your honor. He's testifying.
 
 
 42
 THE COURT: Yes, sustained. It's improper impeachment.
 
 
 43
 It is accurate that defense counsel engaged in improper impeachment because the answer he attempted to elicit was not inconsistent with any statement made by D.J. on direct or cross-examination. Hence, the prior statement D.J. allegedly made to the investigator was inadmissible hearsay and irrelevant. Federal Rule of Evidence 103(c) provides that the trial judge should prevent inadmissible evidence from being suggested to the jury by counsel asking improper questions in the presence of the jury. Before a witness may be impeached with a statement, the statement must be inconsistent with the witness's in-court testimony. See 28 Charles Alan Wright & Victor James Gold, Federal Practice and Procedure § 6202 (1993 & Supp.1997). Nothing in the record even suggests that D.J. previously testified on direct or up to the point on cross-examination when the question was asked whether McCabe came into the Ereaux residence on the date in question and woke up D.J. and A.E. Thus, the district court was correct in ruling that defense counsel's cross-examination was improper impeachment.
 
 
 44
 Moreover, defense counsel's cross-examination of D.J. was effective despite limitations imposed by the district court. Cross-examination withstands constitutional scrutiny "as long as the jury receives sufficient information to appraise the biases and motivations of the witness." United States v. Feldman, 788 F.2d 544, 554 (9th Cir.1986), cert. denied, 479 U.S. 1067 (1987). McCabe claims on appeal that D.J.'s cross-examination was designed to demonstrate that D.J. was involved in substantial drug usage and was not truthful about his drug sources. The jury received ample testimony regarding D.J.'s persistent drug use. Significantly, McCabe was acquitted of all of the cocaine distribution charges. Thus, McCabe's cross-examination of D.J. concerning the source of his drugs was more than mildly effective and any error by the district court in limiting cross-examination with regard to the supplier of drugs was harmless.
 
 
 45
 McCabe also complains about one instance in which the district court sua sponte interrupted defense counsel's cross-examination of D.J. regarding the source of his drugs and proceeded to issue a cautionary instruction to the jury:
 
 
 46
 Q You indicated on direct that you were--that you had got drugs from Tom McCabe.
 
 
 47
 [D. J.:]
 
 
 48
 A Yes.
 
 
 49
 Q Where did you get those?
 
 
 50
 A Where did I get that?
 
 
 51
 Q Yes.
 
 
 52
 THE COURT: Before we move on, jury, be terribly careful about his statements there that he's made, you know, with no evidence whatsoever to back them up. But just be careful and watch him and keep him to his proof. And I tell you right now, statements and argument of counsel are not evidence in the case.
 
 
 53
 The district court's interruption and instruction to the jury is ambiguous at best and harmless error at the worst. The district court did not strike the testimony, did not admonish the attorney and, significantly, did not dissuade defense counsel from pursuing his line of inquiry. Indeed, immediately after the court's instruction, defense counsel elicited testimony from D.J. indicating that he did not know the source of McCabe's drugs. Thus, the district court's conduct during defense counsel's cross-examination of witnesses does not warrant reversal of the conviction.
 
 
 54
 C. Cross-Examination of E.R.B.
 
 
 55
 McCabe also contends the district court's interruptions and erroneous evidentiary rulings prevented effective cross-examination of E.R.B., the key witness. McCabe argues that the district court improperly sustained several objections to questions posed to E.R.B. He relies upon the following colloquy of defense counsel with E.R.B.:
 
 
 56
 Q Did you tell Investigator Woolworth--or the investigator that Miss Harper was talking about, did you tell him that you got a call from Jennifer First Raised?
 
 
 57
 A I don't remember.
 
 
 58
 Q [E.R.B.], did you tell the investigator that you got a call from [A.E.] ?
 
 
 59
 A Yeah.
 
 
 60
 Q Did you tell the investigator that you were going to go stay with [A.E.] ?
 
 
 61
 A I don't remember.
 
 
 62
 Q Okay. Did you tell the investigator that you put on your clothes and climbed out your bedroom window?
 
 
 63
 A I don't remember.
 
 
 64
 Q Did you tell the investigator that Tom McCabe was with [A.E.] when [A.E.] came to pick you up?
 
 
 65
 A I don't remember what I told the investigator.
 
 
 66
 Q Does it refresh your recollection that you told the investigator--
 
 
 67
 MR. ROSTAD: Objection.
 
 
 68
 MS. HARPER: Objection, your Honor.
 
 
 69
 THE COURT: Sustained, Yes.
 
 
 70
 MR. GALLAGHER: I'm just asking to refresh her recollection.
 
 
 71
 THE COURT: Don't tell me what you're doing. Yes, I'm sitting here watching what you're doing. That's why I'm here, counsel.
 
 
 72
 McCabe also relies upon the following colloquy:
 
 
 73
 Q Okay. He did not look at your legs and your feet. Do you recall talking to that doctor about what happened on August 13th, 1994?
 
 A I don't remember
 
 74
 Q Okay. Would it help your recollection if I mentioned some things to you?
 
 
 75
 MS. HARPER: Objection, your Honor. That would be improper.
 
 
 76
 THE COURT: I think so. And if I think you're going to try to do what I think you're going to try to do, I suggest to you you don't do it.
 
 
 77
 As the transcript clearly illustrates, defense counsel improperly attempted to refresh E.R.B.'s recollection. Federal Rule of Evidence 103(c) provides "to prevent inadmissible evidence from being suggested to the jury by any means, such as ... asking questions in the hearing of the jury." The Advisory Committee's Note to Rule 103(c) indicates that the rule "proceeds on the supposition that a ruling which excludes evidence in a jury case is likely to be a pointless procedure if the excluded evidence nevertheless comes to the attention of the jury." Defense counsel's questions demonstrate that he failed to understand the impropriety of attempting to refresh E.B.R.'s recollection by incorporating into his question the content of material which had not been admitted into evidence. The proper procedure would have been to either excuse the jury and attempt to refresh [E.R.B.'s] recollection with the material, see, e.g., United States v. Adames, 56 F.3d 737, 744 (7th Cir.1995) ("Removing the jury from the courtroom is one way to effectuate the commands of Rule 103(c)."), cert. denied, 116 S.Ct. 2512 (1996), or to request that the witness silently review the material and determine whether it refreshes her recollection. She could then be asked if her recollection had been refreshed. Defense counsel initially did not follow this procedure prompting the appropriate objections. After the objections were sustained, defense counsel finally complied with the proper procedure and sought to have the witness refresh her memory with a written document allegedly containing her statements. Under these circumstances, we find that the district court's response to defense counsel's failure to follow Rule 103(c) was appropriate.
 
 
 78
 We note, however, that the district court did occasionally err by preventing defense counsel from appropriately attempting to impeach E.R.B. To illustrate, the court precluded defense counsel from cross-examining E.R.B. regarding prior statements she made to her examining physician, to a tribal investigator, and a woman named Melinda Payne following the sexual abuse incidents which were inconsistent with her testimony at trial. Under Rule 613(a) of the Federal Rules of Evidence, a cross-examiner, in questioning the witness about her own prior statement, whether written or not, need not show the statement nor disclose its contents to the witness at the time of the examination. The trial transcript indicates that the district court sustained the government's objections to defense counsel's inquiries because defense counsel used leading questions incorporating the content of E.R.B.'s alleged prior statements before the trier of fact. Had defense counsel been attempting to utilize this procedure to refresh the witness's recollection, we would agree that this was improper. However, defense counsel was attempting to lay a foundation for the introduction of E.R.B.'s prior inconsistent statements by asking her whether she had made the statements. See Wood v. Stihl, Inc., 705 F.2d 1101, 1109 (9th Cir.1983) (where an inconsistent statement has been made in trial the cross-examiner may ask the witness whether he made the statement, Fed.R.Evid. 613). It appears the district court may not have distinguished between defense counsel's improper attempts to refresh the witness's recollection and his proper attempts to satisfy the foundation requirements to impeach E.R.B. with her prior inconsistent statements.
 
 
 79
 In any event, McCabe concedes on appeal that defense counsel subsequently was able to elicit from E.R.B. that she had made the inconsistent statements. Thus, even if the district court improperly restricted the scope of defense counsel's examination of E.R.B., any error was harmless.
 
 D. Bias
 
 80
 McCabe claims that the district court improperly restricted the scope of his cross-examination of both D.J. and E.R.B. because the court was clearly biased in favor of the prosecution and against the defense. McCabe continues that the district court improperly restricted the scope of cross-examination because the court was "obsessed" with protecting E.R.B. from cross-examination. A complete review of the record indicates that no bias can reasonably be inferred from the court's handling of this case. The court's comments in the presence of the jury were appropriate given defense counsel's persistent attempts to improperly suggest to the jury facts not admitted in evidence. Moreover, at the end of closing argument, the court specifically instructed the jury that:
 
 
 81
 It is the duty of the court to admonish an attorney who, out of zeal for his or her cause, does something which the court feels is not keeping with the rules of evidence or procedure. You are to draw absolutely no inference against the side to whom an admonition by the court may have been addressed during trial of this case.
 
 
 82
 Regarding the allegation that the court was "obsessed" with protecting E.R.B., McCabe ignores the propriety of restraints upon cross-examination imposed for the specific purpose of protecting witnesses from harassment or undue embarrassment under Federal Rule of Evidence 611(a)(3). Given the age of E.R.B. and the sensitive nature of her testimony, the district court's efforts to shield the witness pursuant to Rule 611(a) were proper. The district court did not demonstrate any bias against the defense, and McCabe's motions for mistrial were properly denied.
 
 II. Sufficiency of the Evidence
 
 83
 McCabe contends that insufficient evidence was presented at trial to support the required element in both Counts I and II that the sexual abuse of E.R.B. occurred on the Fort Belknap Indian Reservation. McCabe also challenges the sufficiency of the evidence supporting the requirements in Count I that McCabe used force against E.R.B. and threatened and placed E.R.B. in fear that she would be subjected to death, serious bodily injury, or kidnapping.
 
 
 84
 In considering a challenge to the sufficiency of the evidence, the court must decide "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Aichele, 941 F.2d 761, 763 (9th Cir.1991) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). In reviewing evidence, this Court must "respect the exclusive province of the trier of fact to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts." United States v. Ginn, 87 F.3d 367, 369 (9th Cir.1996) (quoting United States v. Ramos, 558 F.2d 545, 546 (9th Cir.1977).
 
 
 85
 Although McCabe disparages E.R.B.'s testimony regarding the location of the three sexual abuse incidents she suffered, E.R.B.'s testimony was sufficient to support a finding that all of the offenses took place on an Indian reservation. E.R.B. testified that they drove to the back roads of the King residence; she opened a gate; got back into the truck and she thought they drove "a mile down the road" where the first sexual offense occurred. Although E.R.B. did not know whether that location was on the Fort Belknap Indian Reservation, her description of the location given to Criminal Investigator Martin F. Wilkie was sufficient for him to determine that the incident occurred on the Reservation. When he testified, Wilkie had twenty-four years of criminal investigative experience with the Bureau of Indian Affairs; he had been responsible for the investigation and worked as an investigator on the Fort Belknap Reservation for one year. Wilkie testified with particularity that the King residence is "located in the southeastern part of the Fort Belknap Indian Reservation" and is "probably within a couple of miles of the reservation boundaries." On cross-examination he stated that he did not know which of the gated roads she opened but he added "from what she told me it was near where Mike King gets off the school bus which would have been the King residence." He then concluded that the road they turned off would lead off the reservation, "but the road they turned on to, if they went within a mile [as E.R.B. testified], ... would have still been within the reservation boundaries." (emphasis added)
 
 
 86
 E.R.B. testified that the second incident occurred on the Reservation across the highway from the Ereaux residence on a slope with some trees and that the third incident occurred on the Reservation in a canyon past the Ereaux residence. As the government points out, E.R.B. was not an individual unfamiliar with the Reservation because she grew up on the Reservation and it was her home. Although the government's evidence was not strong on the jurisdictional nexus, it was sufficient to sustain a jury verdict. See United States v. Frederick, 78 F.3d 1370, 1374 (9th Cir.1996) (although the victim admitted uncertainty about where the crimes occurred and we found the evidence of the location of the crimes "sketchy," the verdict was not overturned for insufficient evidence). We conclude that the evidence was sufficient for a reasonable trier of fact to have found that the three sexual abuse incidents occurred on the Reservation.
 
 
 87
 The force and threat elements of Count I were supported by E.R.B.'s testimony, the testimony of Dr. Allen Thorne, E.R.B.'s examining physician, and Susan Hegge, a medical technologist, both of whom examined E.R.B. on the morning of August 14, 1995. E.R.B. testified that during the attacks McCabe threatened her with a gun and threatened to kill her. She also testified that McCabe forced her to have sex. Dr. Thorne and Hegge both testified that they noticed that E.R.B. had a bruise on her upper left arm, which was consistent with E.R.B.'s testimony that McCabe grabbed her arm to keep her in his truck. Thus, combining the physical evidence of E.R.B.'s injury to her arm with her own testimony regarding the force and threats used against her by McCabe, there is no doubt that a rational jury could have concluded beyond a reasonable doubt that all essential elements of Counts I and II were proven.
 
 III. Medical Examination Exception
 
 88
 McCabe contends that E.R.B.'s hearsay statements identifying him as the perpetrator of the sexual abuse she experienced was not admissible under Fed.R.Evid. 803(4).[3] In United States v. George, 960 F.2d 97 (9th Cir.1992), we held there was no abuse of discretion in admitting the hearsay statements of a victim of sexual abuse via the testimony of the victim's examining physician pursuant to the medical examination exception to the hearsay rule. Id. at 99-100. In Georqe, the court determined that the hearsay statements of a sexual abuse victim are "reasonably pertinent to diagnosis or treatment" because "[s]exual abuse involves more than physical injury; the physician must be attentive to treating the victim's emotional and psychological injuries, the exact nature and extent of which often depend on the identity of the abuser." Id. at 99; United States v. Joe, 8 F.3d 1488, 1494 (10th Cir.1993) ("All victims of domestic sexual abuse suffer emotional and psychological injuries ...."), cert. denied, 510 U.S. 1184 (1994). In the instant case, E.R.B.'s therapist testified that E.R.B. communicated to her for the purpose of advancing E.R.B.'s treatment of her emotional and psychological trauma. Under the particular factual circumstances of this case and based on clear precedent in this circuit, we are persuaded that the district court correctly admitted E.R.B.'s statements identifying McCabe as the perpetrator of the sexual abuse.
 
 IV. Specific Unanimity Instruction
 
 89
 Defendants have a right to a unanimous jury verdict, as guaranteed by the Sixth Amendment and Article III, section 2 of the United States Constitution. United States v. Echeverry, 698 F.2d 375, 377 (9th Cir.), modified, 719 F.2d 974 (9th Cir.1983). McCabe claims that his right to a unanimous jury verdict was violated by the district court's failure to provide a specific unanimity instruction to the jury.[4] The three sexual acts were charged together as three acts of aggravated sexual abuse in Count I and three acts of sexual abuse of a minor in Count II. The Counts are duplicitous. Because McCabe did not request a specific unanimity instruction at trial, we review only for plain error. United States v. Payseno, 782 F.2d 832, 834 (9th Cir.1986).
 
 
 90
 Normally, a general unanimity instruction will be sufficient to protect the defendant's rights. Id. at 835. We have recognized an exception when it appears that "there is a genuine possibility of jury confusion or that a conviction may occur as the result of different jurors concluding that the defendant committed different acts, the general unanimity instruction does not suffice." Echeverry, 719 F.2d at 975. "Juror confusion is often a genuine possibility when the nature of the evidence is complex, when there is a discrepancy between the evidence and the indictment, or some other particular factor creates such a possibility of confusion." Jeffries v. Blodgett, 5 F.3d 1180, 1195 (9th Cir.1993), cert. denied, 510 U.S. 1191 (1994). A specific unanimity instruction may be required "where the indictment is sufficiently broad and ambiguous so as to present a danger of jury confusion." United States v. Anguiano, 873 F.2d 1314, 1319 (9th Cir.), cert. denied, 493 U.S. 969 (1989). If juror confusion is a genuine possibility, then the trial judge must "augment the general instruction to ensure the jury understands its duty to unanimously agree to a particular set of facts." Echeverry, 719 F.2d at 975.
 
 
 91
 The circumstances of this case reveal that there was not a genuine possibility of jury confusion or a possibility that the conviction against McCabe may have been the result of different jurors concluding that McCabe committed different acts. Count I of the indictment reads:
 
 
 92
 That on or about the 13th day of August, 1994, near the Beaver Creek/Zortman area in the State and District of Montana, and on and within the exterior boundaries of the Fort Belknap Indian Reservation, being Indian Country, defendant THOMAS P. McCABE, an Indian person, knowingly engaged, or attempted to engage, in sexual acts with E.R.B., by using force against E.R.B. and by threatening and placing E.R.B. in fear that she would be subjected to death, serious bodily injury, or kidnapping, in violation of 18 U.S.C. §§ 1153 and 2241.
 
 
 93
 (emphasis added)
 
 Count II of the indictment reads:
 
 94
 That on or about the 13th day of August, 1994, near the Beaver Creek/Zortman area in the State and District of Montana, and on and within the exterior boundaries of the Fort Belknap Indian Reservation, being Indian Country, defendant, THOMAS P. McCABE, an Indian person, knowingly engaged in sexual acts with E.R.B., a person who had attained the age of 12 years but not the age of 16 years, and at the time of the sexual act defendant, THOMAS P. McCABE, was more than four years older than E.R.B., in violation of 18 U.S.C. §§ 1153 and 2243.
 
 
 95
 (emphasis added)
 
 
 96
 The Counts refer to the sexual acts in plural and both counsel in opening and closing argument referred to the three acts as if they were charged in both counts. Moreover, the prosecutor stated, without objection, that the jury could convict McCabe if they found him guilty of one sexual act in each Count. Thus, there was no indication that the defendant was confused about the offenses the prosecutor intended to pursue or that he would be hindered in pleading double jeopardy in a subsequent prosecution. United States v. Steward, 16 F.3d 317, 319-20 (9th Cir.1994); United States v. Morse, 785 F.2d 771, 773 (9th Cir.), cert. denied, 476 U.S. 1186 (1986). Moreover, there was a stipulation that McCabe was an Indian and that the victim was the required age for Count II. There was sufficient evidence that the three acts occurred on the Reservation and that the acts were committed with force and threats. There was no serious risk that the conviction was not based on an unanimous jury verdict. United States v. Baker, 10 F.3d 1374, 1408 (9th Cir.1993). There was no error, much less plain error, in the district court's not giving a specific unanimity instruction.
 
 V. Sentencing
 
 97
 McCabe contends that the district court erred by basing a four-level upward adjustment for the use or display of any dangerous weapon, U.S.S.G. § 2A3.1(b)(1), and a two-level upward adjustment based on the victim's vulnerability, U.S.S.G. § 3A1.1(b), on conduct for which McCabe was acquitted by a jury. The Supreme Court has recently held that a jury's verdict of acquittal does not prevent the sentencing court from considering conduct underlying an acquitted charge, so long as the conduct has been proven by a preponderance of the evidence. United States v. Watts, 117 S.Ct. 633, 638 (1997). Here the district court found the requisite facts necessary to support the contested upward adjustments under Watts. We therefore find no error in sentencing.
 
 CONCLUSION
 
 98
 We therefore affirm the defendant's conviction.
 
 
 
 **
 The Honorable Roslyn O. Silver, United States District Judge for the District of Arizona, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 The sentencing transcript indicates that the judge adopted an offense level of 33, with a range of 135-168 months. He then sentenced McCabe to 168 months
 
 
 [2]
 Trial court limits on cross-examination are reviewed for abuse of discretion, United States v. Dees, 34 F.3d 838, 843 (9th Cir.1994), and limitations that are severe enough to constitute a Confrontation Clause violation are reviewed de novo, id. Even if a district court improperly denied a defendant's opportunity to impeach a witness in violation of the Sixth Amendment's Confrontation Clause, harmless error review applies. Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Dees, 34 F.3d at 844
 
 
 [3]
 Rule 803(4) of the Federal Rules of Evidence permits the admission of "[s]tatements made for the purpose of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
 
 
 [4]
 At the end of the jury instructions, the district court issued the following general unanimity instruction:
 The verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree thereto. Your verdict must be unanimous.