**Gary Dwayne BRUCE, Petitioner–Appellant,**

v.

**Cal TERHUNE;  California Attorney General, Respondents–Appellees.**

No. 02–16992.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 4, 2003.

Filed July 19, 2004.

---

Quin Denvir, Federal Defender, and Ann C. McClintock (argued), Assistant Federal Defender, Sacramento, CA, for the petitioner-appellant.

Bill Lockyer, Attorney General of the State of California, Robert R. Anderson, Chief Assistant Attorney General, Jo Graves, Senior Assistant Attorney General, Erik R. Brunkal, Supervising Deputy Attorney General, Michael A. Canzoneri, Supervising Deputy Attorney General, and David A. Lowe (argued), Deputy Attorney General, Sacramento, CA, for the respondents-appellees.

Before BROWNING, O'SCANNLAIN, and FISHER, Circuit Judges.

PER CURIAM.

In this appeal from the denial of a petition for a writ of habeas corpus arising out of a prosecution for lewd and lascivious conduct with a child, we must decide whether the state court unreasonably ap-

plied clearly established Federal law on burden of proof and whether sufficient evidence exists to support the conviction.

## I

A California Superior Court jury convicted Gary D. Bruce of six counts of lewd and lascivious conduct with a child under the age of fourteen in violation of Cal.Penal Code § 288.

Bruce's prosecution stemmed from two alleged instances of molestation. The first was in September 1996, when Bruce's ten-year-old cousin, Catina B., spent the night at Bruce's home as the guest of Bruce's daughters Angela, age 13, and Amanda, age 12. Also present were Bruce's son Jamie, age 7, and a friend of Angela's, Dawn Gilbert, around 13 years of age.

Catina testified that the children fell asleep in Bruce's bed after watching television. She recounted that she was awakened when Bruce got into bed next to her and began touching her over her clothing. She went on to describe how he kissed her, rubbed her under her clothing on her chest, touched her genitalia, and forced her to touch his penis. After instructing her not to tell anyone what had happened in the approximately 20–minute encounter, Bruce fell asleep. Catina then attempted to rouse Angela and Dawn to tell them what had happened, but "they acted like they didn't care" and went back to sleep. Catina herself then dropped off to sleep, and Bruce was not in the bed when the children awoke in the morning.

Catina recounted a second incident in which Bruce sexually abused her. In December 1996, she was again at Bruce's home for a sleep-over, along with Angela, Amanda, Jamie, and Dawn. The children again fell asleep in Bruce's bed. Catina claimed that a drunken Bruce woke her, carried her from the bed to a couch in the living room, then lay next to her. He kissed her, touched her over and under her clothing, and placed his finger in her vagina. Catina told the jury that she returned to the bedroom and informed Angela and Dawn that Bruce had been "messing with" her. She also recalled that she and Dawn spoke of the incident the following morning.

Dawn Gilbert's testimony was offered in support of Catina's account. Dawn could remember only one time when the girls shared Bruce's bed, but could not recall exactly when this occurred (although the record strongly implies that Dawn's testimony described the December 1996 sleepover).

She testified that she heard Catina say "no" and saw Bruce standing over Catina's side of the bed during the night. She also reported that Catina had said in the morning that Bruce had kissed her. Dawn's trial testimony was supported in turn by the testimony of Investigator Richard West, who told the jury about two interviews he had conducted with Dawn. Dawn told West that she awoke in Bruce's bed on one night in December 1996 to hear Catina tell Bruce to "go away" and "leave me alone." Dawn described Bruce as "wasted." She also told West that Catina had said the following morning that Bruce had been "messing around with her."

The defense offered the testimony of Bruce's daughters Angela and Amanda. Both could recall only one sleepover, which took place in December. Angela testified that she awoke during the night when she heard Catina yell out. She saw Bruce turn off the bedroom light and exit the room. Amanda testified that she heard no yelling, but that she did awaken to see her father turning off the light. In rebuttal, Investigator West told the jury that both girls confirmed in interviews that their father had been drinking that night. And

neither girl had told West that she had awakened during the night.

The defense also offered testimony from Bruce's ex-wife, Tammy Bruce, who contradicted Catina's testimony regarding the size of Bruce's bed: against Catina's claim that the bed was king-sized, she testified that the bed was "full-size" (i.e., double). But the defense's primary witness was Bruce himself, who emphatically denied that he had molested Catina. He stated that it was common for Catina and Dawn to stay overnight at his home and to sleep with the other girls in his bed. He also told the jury that it was his habit to turn off the bedroom light at night.

The jury convicted Bruce on four counts of lewd and lascivious conduct stemming from the September incident and two counts arising from the December incident. Bruce was sentenced to 16–years imprisonment.

On direct appeal to the California Court of Appeal, Bruce raised, among others, the two claims he now reiterates: (1) that the combination of two jury instructions impermissibly lightened the State's burden of proof; and (2) that there was insufficient evidence to justify his conviction. The Court of Appeal affirmed Bruce's conviction, and the California Supreme Court summarily denied his petition for review.

Bruce filed this petition for a writ of habeas corpus in the Eastern District of California in October 2001. Adopting in full the report and recommendations of the magistrate judge, Judge Damrell denied the petition in August 2002. Pursuant to a Certificate of Appealability issued by the district court, this appeal timely followed.

## II

Because Bruce's habeas petition was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. §§ 2241–55, that statute's provisions govern our review. We therefore begin by recalling that AEDPA prescribes that a federal court may grant relief only if California's adjudication of the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). AEDPA also authorizes relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d)(2).

The Supreme Court has repeatedly explained that AEDPA—which embodies deep-seated principles of comity, finality, and federalism—establishes a highly deferential standard for reviewing state-court determinations. *See, e.g., Williams v. Taylor,* 529 U.S. 420, 436, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000); *Lindh v. Murphy,* 521 U.S. 320, 333 n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997). A decision is "contrary to" clearly established law if it fails to apply the correct controlling authority, or if it applied the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result. *See Williams v. Taylor,* 529 U.S. 362, 413, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle ... but unreasonably applies that principle to the facts of the prisoner's case." *Id.* And the Court has made it clear that an unreasonable application of federal law must be more than merely incorrect to warrant relief: instead, the state court's application of federal law must be "objectively unreasonable." *See, e.g., Lockyer v. Andrade,*

538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003) ("The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.") (citation omitted); *Early v. Packer*, 537 U.S. 3, 11, 123 S.Ct. 362, 154 L.Ed.2d 263 (2002) (per curiam) (AEDPA requires that "decisions which are not 'contrary to' clearly established Supreme Court law can be subjected to habeas relief only if they are not merely erroneous, but 'an *unreasonable* application' of clearly established federal law[.]") (emphasis in original); *Penry v. Johnson*, 532 U.S. 782, 793, 121 S.Ct. 1910, 150 L.Ed.2d 9 (2001) ("[E]ven if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable."); *Williams*, 529 U.S. at 410, 120 S.Ct. 1495 ("[T]he most important point is that an *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (emphasis in original). The Court has strongly implied, moreover, that the same standard of objective unreasonableness applies under AEDPA § 2254(d)(2), and we have recently so held. *See Williams*, 529 U.S. at 386, 120 S.Ct. 1495; *Taylor v. Maddox*, 366 F.3d 992, 999 (objective unreasonableness standard applies to § 2254(d)(2)).

■ AEDPA also limits the scope of clearly established federal law to the holdings (as opposed to the dicta) of the Supreme Court at the time of the state-court decision under review. *See Andrade*, 538 U.S. at 71, 123 S.Ct. 1166; *Williams*, 529 U.S. at 412, 120 S.Ct. 1495. Thus, "[w]hile circuit law may be 'persuasive authority' for purposes of determining whether a state court decision is an unreasonable application of Supreme Court law, only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied." *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003) (internal citation omitted).

### III

With AEDPA's mandates firmly in mind, we now turn to the merits of Bruce's petition.

### A

■ Bruce first contends that the combination of two jury instructions constituted a due process deprivation that rendered his trial fundamentally unfair. The first instruction stated:

> You should give the testimony of single witness whatever weight you think it deserves. However, testimony by one witness which you believe concerning any fact is sufficient for the proof of that fact. You should carefully review all the evidence upon which the proof of such fact depends.[1]

The second instruction informed jurors that

> [i]t is not essential to a conviction of the charge that the testimony of the witness with whom sexual contact is alleged to have occurred be corroborated by other evidence.[2]

---

1. This language slightly modifies Cal. Jury Instruction—Crim. 2.27, which reads as follows: "You should give the[uncorroborated] testimony of a single witness whatever weight you think it deserves. Testimony concerning any fact by one witness, which you believe,[whose testimony about that fact does not require corroboration] is sufficient for proof of that fact. You should carefully review all the evidence upon which the proof of that fact depends." (optional language in original).

2. This instruction modifies Cal. Jury Instruction—Crim. 10.60: "It is not essential to a

Bruce argues that, because his trial effectively boiled down to a credibility contest between Catina and him, these instructions unconstitutionally lightened the State's burden of proof by conveying to the jurors that Catina's testimony was to be favored in determining guilt.

The California Court of Appeal on direct appeal did not explicitly apply federal law in upholding the combination of the two instructions. *See Early,* 537 U.S. at 8, 123 S.Ct. 362 (noting that state court need not cite or even be aware of Supreme Court cases). Reasoning that the instructions did not modify one another, the Court of Appeal concluded that they did not unduly single out Catina's testimony.

In support of his claim of a due process violation, Bruce cites only *In re Winship's* admonition that the Due Process Clause requires "proof beyond a reasonable doubt of every fact necessary to constitute the crime with which[the defendant] is charged." 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970); *see also Middleton v. McNeil,* —— U.S. ——, ——, 124 S.Ct. 1830, 1832, 158 L.Ed.2d 701 (2004) (per curiam) ("In a criminal trial, the State must prove every element of the offense, and a jury instruction violates due process if it fails to give effect to that requirement."); *Carella v. California,* 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989) ("Jury instructions relieving States of [the burden of proving every element of an offense beyond a reasonable doubt] violate a defendant's due process rights."); *Sandstrom v. Montana,* 442 U.S. 510, 519, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979) (stating that *Winship* "provides the appropriate mode of constitutional analysis" for due process challenges alleging that jury instructions impermissibly shift burdens of

proof). Beyond this general and oft-repeated principle of trial fairness, however, Bruce is unable to point to any more specific holdings of the Supreme Court that the California decision ostensibly contravenes.

■ We agree that *Winship* constitutes the clearly established law governing Bruce's claim. And keeping in mind the principle that "[a] single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge," *Cupp v. Naughten,* 414 U.S. 141, 146–47, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973), we are satisfied that the jury was charged in accordance with *Winship's* broad mandate. Although Bruce complains that the two instructions lessened the State's burden of proof beyond a reasonable doubt, the jury was instructed that Bruce was presumed innocent until proven guilty immediately following the challenged sufficiency instruction. The jury was then told that the State had the burden of proving guilt beyond a reasonable doubt; that the crime of lewd and lascivious conduct with a child required proof of specific intent; and that each element of the crime must be proved. In short, the instructions as a whole made clear to the jury that the prosecution bore the burden of proving each element of the crime beyond a reasonable doubt. *See id.* at 149, 94 S.Ct. 396 (instruction that every witness was presumed truthful did not violate due process where jury was otherwise properly instructed on the presumption of innocence and the state's burden of proof beyond a reasonable doubt); *Martin v. Ohio,* 480 U.S. 228, 233, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (jury charge that placed on defendant the burden of proving self-defense by a preponderance of evi-

finding of guilt on a charge of [rape] [unlawful sexual intercourse] [ (sexual activity) ] that the testimony of the witness with whom sexual relations is alleged to have been committed be corroborated by other evidence." (optional language in original).

dence did not violate due process where jury was instructed that it must find that state had proved all elements of crime beyond a reasonable doubt). Moreover, the instructions in this case in no way resemble those anathematized by the Supreme Court for their establishment of mandatory presumptions. *See Francis v. Franklin,* 471 U.S. 307, 325, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985); *Sandstrom,* 442 U.S. at 521–23, 99 S.Ct. 2450. We therefore conclude that the instructions comport with *Winship's* due process standard.

■ Our conclusion is bolstered by the fact that we have previously approved, in separate cases, an identical sufficiency instruction and a substantially similar no-corroboration instruction. Although only the Supreme Court's precedents are binding on state courts under AEDPA, our precedents may provide guidance as we review state-court determinations. *See Duhaime v. Ducharme,* 200 F.3d 597, 600 (9th Cir.1999) ("Our cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help us determine what law is 'clearly established.' "). In *Drayden v. White,* 232 F.3d 704 (9th Cir. 2000), we expressly rejected the argument that an identical sufficiency instruction "impermissibly dilut[ed] the prosecution's burden of proof," explaining that the jury was separately instructed on the prosecution's burden of proving every element of the offense beyond a reasonable doubt. *Id.* at 714–15; *see also Turner v. Calderon,* 281 F.3d 851, 866–67 (9th Cir.2002) (holding that nearly identical sufficiency instruction did not lessen government's burden of proof). And in *People of the Territory of Guam v. McGravey,* 14 F.3d 1344 (9th Cir.1994), we upheld an instruction asserting that a victim's testimony

need not be corroborated if the victim "is believed beyond a reasonable doubt." *Id.* at 1345. Because the jury was correctly instructed on the burden of proof and the presumption of evidence, as well as the factors to be considered in weighing witness testimony, we held that the no-corroboration instruction was proper. *Id.* at 1347.

As in *Drayden* and *McGravey,* the jury in this case was properly instructed on the burden of proof, the presumption of innocence, and the factors for evaluating witness testimony. Given that the two instructions in this case accord both with the legal principle established by the Supreme Court in *Winship* and our precedents, we conclude that the California Court of Appeal's upholding of the two jury instructions was neither contrary to clearly established Federal law, nor did it involve an unreasonable application of such law.

B

1

Bruce next contends that his conviction was unsupported by sufficient evidence. He emphasizes certain inconsistencies in Catina's testimony; contradictions in the testimony of Dawn, Angela, and Amanda; and, most importantly, he argues the inherent implausibility of Catina's account of molestation while sleeping in a bed crowded with several other children. Identifying *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), as the governing legal standard, Bruce asserts that no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319, 99 S.Ct. 2781.

The State agrees that *Jackson* governs challenges based on sufficiency of the evidence on habeas review. But it contends that Bruce's claim must be viewed through

the lens of AEDPA, which would permit relief only if the California Court of Appeal's decision on the sufficiency claim constituted an "unreasonable application" of *Jackson.* The State maintains that habeas relief is here unwarranted because the California court's application of *Jackson* was not "objectively unreasonable." *See Andrade,* 538 U.S. at 75, 123 S.Ct. 1166.

The question whether AEDPA requires an additional degree of deference to state courts' resolution of sufficiency of the evidence claims is unsettled in our circuit. We have suggested in dicta that additional deference would be appropriate in light of AEDPA's reforms. *See Mitchell v. Prunty,* 107 F.3d 1337, 1339 n. 3 (9th Cir.1997), *overruled on other grounds by Santamaria v. Horsley,* 133 F.3d 1242, 1242 (9th Cir.1998) (en banc). But other cases simply apply the *Jackson* standard without an additional layer of AEDPA deference. *See Davis v. Woodford,* 333 F.3d 982, 992 (9th Cir.2003); *Turner v. Calderon,* 281 F.3d 851, 881–82 (9th Cir.2002). Our most recent decision expressly left open the question of whether AEDPA deference is required in this context. *See Chein v. Shumsky,* 373 F.3d 978, 982 (9th Cir.2004) (en banc). Because we are satisfied that Bruce's claim fails under either approach, we decline to decide whether the enactment of AEDPA has altered the contours of the *Jackson* inquiry.

### 2

We now turn to the merits of Bruce's sufficiency of the evidence claim.

Bruce claims that inconsistencies and conflicts in the record throw his conviction into doubt. He first argues that no testimony corroborates that the September 1996 sleepover even occurred (Angela, Amanda, and Dawn could only recall the December sleepover); thus, only Catina's testimony establishes that the earlier instance of molestation happened. Because Catina's account of being molested on a bed along-side four other sleeping children is inherently implausible, Bruce continues, no rational factfinder could have found him guilty beyond a reasonable doubt on the four counts stemming from the September incident.

■ *Jackson* cautions reviewing courts to consider the evidence "in the light most favorable to the prosecution." 443 U.S. at 319, 99 S.Ct. 2781. If confronted by a record that supports conflicting inferences, federal habeas courts "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326, 99 S.Ct. 2781. A jury's credibility determinations are therefore entitled to near-total deference under *Jackson. See Schlup,* 513 U.S. at 330, 115 S.Ct. 851 ("[U]nder *Jackson,* the assessment of the credibility of witnesses is generally beyond the scope of review."); *see also United States v. Brady,* 579 F.2d 1121, 1127 (9th Cir.1978) (explaining that, in applying *Jackson* test for sufficiency of the evidence, "it is the exclusive function of the jury to determine the credibility of the witnesses, resolve evidentiary conflicts and draw reasonable inferences from proven facts"); *United States v. Ramos,* 558 F.2d 545, 546 (9th Cir.1977) ("[T]he reviewing court must respect the exclusive province of the jury to determine the credibility of witnesses, resolve evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the jury resolved all such matters in a manner which supports the verdict.").

■ Here, Catina cried foul and Bruce denied all. The jury resolved this paradigmatic credibility contest by determining that Catina was more believable. Except

in the most exceptional of circumstances, *Jackson* does not permit us to revisit such credibility determinations. And we cannot say—despite Bruce's protestations—that Catina's account of the September incident is physically impossible and simply could not have occurred as described. We therefore conclude that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *See Jackson,* 443 U.S. at 319, 99 S.Ct. 2781; *cf. McGravey,* 14 F.3d at 1346–47 (upholding conviction for sexual molestation based entirely on the uncorroborated testimony of the victim).

Similarly, we reject Bruce's insufficiency claim with regard to the two counts arising from the December incident. The jury was again asked to exercise its basic function of weighing credibility. This time, however, Catina's account—although contradicted in some particulars—was supported by other testimony. Dawn told the jury that she awoke in the middle of the night to find Bruce standing over Catina's side of the bed and heard Catina say "no." Dawn also testified that Catina had reported the next morning that Bruce had kissed her. Dawn confirmed Catina's story that the two girls had discovered a pornographic video in the VCR the following morning. Moreover, the jury learned that Dawn's trial testimony was consistent with what she had told Investigator West in two interviews. Investigator West's testimony also revealed that Dawn had told him in an interview that Bruce was "wasted"—corroborating Catina—and that Angela and Amanda both confirmed that their father had been drinking that night.

Bruce emphasizes that Dawn, Angela, and Amanda each testified that Catina verbally remonstrated Bruce, but Catina testified that she did not cry out when Bruce removed her from the bed. We must presume, however, that the jury resolved this conflict in favor of the prosecution. *See Jackson,* 443 U.S. at 326, 99 S.Ct. 2781. And although Bruce repeats his broader claim that Catina's account of the December incident is inherently implausible, we again cannot conclude that her story is wholly incredible. In sum, our review of the entire record has revealed nothing to cast doubt on the jury's verdict. Because a rational trier of fact could have been persuaded beyond a reasonable doubt that Bruce was guilty of lewd and lascivious conduct with a child, habeas relief is unwarranted.

AFFIRMED.

O'SCANNLAIN, Circuit Judge, concurring specially:

Because I agree that his claim fails whether we apply *Jackson* as a freestanding test on habeas review or filter *Jackson* through AEDPA, I concur in the rejection of Bruce's insufficient evidence claim on the former ground. I write separately, however, to express the preferable view that AEDPA requires us to evaluate state courts' applications of *Jackson* for objective unreasonableness.

As the court's opinion correctly notes, this question remains open in our circuit, *see Chein v. Shumsky,* 373 F.3d 978, 982 (9th Cir.2004) (en banc), but five of our sister circuits have concluded that a sufficiency of the evidence claim presents a legal determination that must be evaluated through the AEDPA standard of review embodied in § 2254(d)(1). *See Torres v. Mullin,* 317 F.3d 1145, 1151–52 (10th Cir. 2003); *Ponnapula v. Spitzer,* 297 F.3d 172, 180 (2d Cir.2002); *Sanford v. Yukins,* 288 F.3d 855, 863 (6th Cir.2002); *Piaskowski v. Bett,* 256 F.3d 687, 691 (7th Cir.2001); *Hurtado v. Tucker,* 245 F.3d 7, 16 (1st

Cir.2001).[1] These circuits have reasoned, in the words of the Tenth Circuit, that "[t]he amendments to the habeas corpus statutes set forth in AEDPA have added an additional degree of deference to state courts' resolution of sufficiency of the evidence questions." *Torres*, 317 F.3d at 1151. No circuit has explicitly held that a state court's *Jackson* inquiry is exempt from AEDPA's standard of review.

Because the *Jackson* test presents a quintessentially legal question—whether as a matter of fundamental due process a conviction is underpinned by sufficient evidence—I agree with those of our sister circuits that evaluate sufficiency of the evidence claims under § 2254(d)(1). *See Jackson*, 443 U.S. at 313–14, 99 S.Ct. 2781 ("This is the first of our cases to expressly consider the question whether the due process standard recognized in *Winship* constitutionally protects an accused against conviction except upon evidence that is sufficient fairly to support a conclusion that every element of the crime has been established beyond a reasonable doubt."). Such a view also comports with the common understanding of sufficiency of the evidence claims as matters of law. *See Schlup v. Delo*, 513 U.S. 298, 330, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) ("Under *Jack-*

*son*, the question whether the trier of fact has power to make a finding of guilt requires a binary response: Either the trier of fact has power as a matter of law or it does not."); *Carmell v. Texas*, 529 U.S. 513, 547, 120 S.Ct. 1620, 146 L.Ed.2d 577 (2000) ("Sufficiency of the evidence rules (by definition) do just that—they inform us whether the evidence introduced is sufficient to convict as a matter of law[.]"); *Griffin v. United States*, 502 U.S. 46, 59, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991) ("In one sense 'legal error' includes inadequacy of evidence—namely when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to identify and correct. In this sense 'legal error' occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient."). Given this understanding of the nature of the *Jackson* inquiry, AEDPA commands that we review state-court legal determinations of sufficiency of the evidence claims under § 2254(d)(1).[2]

This conclusion is not affected by Bruce's invocation of § 2254(d)(2), which provides that a habeas court may grant relief if a state-court decision was "based

---

**1.** The Fourth Circuit, in an opinion later reversed by the Supreme Court on other grounds, evaluated an application of *Jackson* by the Maryland Court of Appeal for unreasonableness under § 2254(d)(1). *See Wiggins v. Corcoran*, 288 F.3d 629, 637–39 (4th Cir. 2002), *rev'd on other grounds sub nom. Wiggins v. Smith*, 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003). The Eighth Circuit has assessed a state court's application of *Jackson* for objective unreasonableness under either § 2254(d)(1) or (d)(2). *See Weston v. Dormire*, 272 F.3d 1109, 1112 (8th Cir.2001). And the Fifth Circuit has accorded AEDPA deference under § 2254(d) to a state court's application of *Jackson* in the context of a petitioner's claim that a jury's finding of fu-

ture dangerousness was unsupported by sufficient evidence. *See Martinez v. Johnson*, 255 F.3d 229, 244–45 (5th Cir.2001).

**2.** To be sure, a plurality of the Supreme Court has suggested that *Jackson* may present a "mixed constitutional question" requiring the application of law to fact. *See Wright v. West*, 505 U.S. 277, 289–90, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality op.). But even if *Jackson* is conceived of in this manner, our review of state-court sufficiency determinations must still lie under § 2254(d)(1). *See Williams*, 529 U.S. at 408–09, 120 S.Ct. 1495; *Davis*, 333 F.3d at 990.

on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." At first glance, § 2254(d)(2) would appear to be implicated by sufficiency of the evidence claims; and the Tenth Circuit was formerly the site of debate over whether sufficiency claims involved legal or factual determinations under AEDPA. *See Fields v. Gibson*, 277 F.3d 1203, 1220–21 (10th Cir. 2002); *Romano v. Gibson*, 239 F.3d 1156, 1164 n. 2 (10th Cir.2001); *Moore v. Gibson*, 195 F.3d 1152, 1176–77 (10th Cir.1999) (each noting split in intracircuit caselaw but avoiding the question because petitioner's claim did not satisfy either standard); *but see Torres v. Mullin*, 317 F.3d 1145, 1151 (10th Cir.2003) (concluding that "sufficiency of the evidence is properly viewed as a legal question"). But while the *Jackson* inquiry necessarily involves a close review of the facts, the Court was careful to explain that it did not intend to disturb the jury's traditional role as factfinder:

> This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution. The criterion thus impinges upon "jury" discretion only to the extent necessary to guarantee the fundamental due process of law.

*Jackson*, 443 U.S. at 319, 99 S.Ct. 2781 (emphasis in original). Review under *Jackson* thus "does not require scrutiny of the reasoning process actually used by the factfinder—if known." *Id.* at 319 n. 13, 99 S.Ct. 2781. And our recent decision in *Taylor v. Maddox* makes clear that review under § 2254(d)(2)'s "unreasonable determination" clause involves precisely this "determin[ation] that the state-court factfinding process is defective in some material way, or perhaps non-existent[.]" *Taylor*, 366 F.3d at 1000. Because Bruce does not here challenge the jury's factfinding process but rather the constitutional sufficiency of the proof against him, it is clear that § 2254(d)(1) provides the relevant standard of review.

AEDPA's language is plain: we must uphold a state-court conviction unless it is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). *Jackson* is undoubtedly the "clearly established Federal law" governing sufficiency of the evidence claims on habeas review. AEDPA here clearly mandates not a direct application of *Jackson*, but a deferential review of a state court's application of *Jackson*.