**Caylie Ryan WILSON, Petitioner,**

v.

**Jeanne S. WOODFORD, Director, Bill Lockyer, Respondents.**

**Case No. EDCV 06–0388–CJC(RC).**

United States District Court, C.D. California.

Jan. 25, 2010.

Caylie Ryan Wilson, Lancaster, CA, pro se.

Anthony Da Silva, CAAG Office of Attorney General of California, San Diego, CA, for Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

GEORGE H. WU, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the Petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; and (3) Judgment shall be entered denying the petition

for writ of habeas corpus and dismissing the action with prejudice.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable George H. Wu, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

### BACKGROUND

#### I

On June 9, 2004, in San Bernardino County Superior Court case no. FSB039256, a jury convicted petitioner Caylie Ryan Wilson of one count of attempted murder in violation of California Penal Code ("P.C") §§ 664/187(a) (count 1), one count of attempted carjacking in violation of P.C. §§ 664/215 (count 2), and one count of possession of a short-barreled rifle in violation of P.C. § 12020(a) (count 3), and, as to counts 1 and 2, the jury found petitioner intentionally and personally discharged a firearm proximately causing great bodily injury within the meaning of P.C. § 12022.53(d); however, as to count 1, the jury found it not to be true that the attempted murder was willful, deliberate and premeditated. Clerk's Transcript ("CT") 183–84, 192–97; Report-er's Transcript ("RT") 528:7–531:25. The petitioner was sentenced to the total term of 34 years and eight months to life in state prison. CT 203–04, 208–09; RT 542:7–544:11.

The petitioner appealed his convictions and sentence to the California Court of Appeal, CT 205, which affirmed the judgment in an unpublished opinion filed October 13, 2005, 2005 WL 2592727. Lodgment no. 7. On November 4, 2005, petitioner sought review from the California Supreme Court, which denied review on December 21, 2005. Lodgment nos. 8–9.

#### II

The California Court of Appeal, in affirming petitioner's judgment, made the following factual findings:[1] At about 6:15 in the evening of May 3, 2003, George Vignon was returning to his apartment on West 21st Street in San Bernardino when he noticed a man sitting on the curb in a slouched position with his knees up to his chin. The man was wearing a black hooded sweatshirt and dark jeans. Vignon drove past the man to his garage, got out of his car, and unlocked and opened his garage door. He backed his car into the garage, got out, and went to the back of his car to unload his groceries. Out of the corner of his eye, he saw the man standing near the front wheel of the driver's side of the car. The man was pointing a short rifle towards Vignon's head. Vignon dropped his keys on the ground. The person thumped the hood of the car twice and said, "Put the keys on top of the car." Vignon replied, "If you are going to shoot, go ahead and shoot." The person again told Vignon to put the keys on top of the car. A few seconds later, Vignon heard a bang and felt pain. He realized he had

---

1. Lodgment no. 7 at 2–5.

been shot. The shooter disappeared. The shooter never took the keys or attempted to get into the car.

Officer John Combado responded at 6:21 p.m. to a report of the shooting. He saw Vignon standing outside his garage holding his head, which was bleeding profusely. Combado found an expended .22–caliber bullet on the pavement outside the garage and a .22–caliber cartridge on the rim of the left front tire of Vignon's car. Vignon told Combado that a white man in his mid–20's, wearing a black pullover shirt, and black pants, had shot him.

Vignon was transported to the hospital. A CAT scan showed that he had received a gunshot wound to the left side of his face. The bullet shattered the cheek bone and the bone underneath the eye socket and had traveled to underneath the right jaw. The shot had nearly killed him, in that the carotid artery had suffered some damage. The bullet shattered into fragments, and the doctors were unable to remove all of the fragments because doing so might have caused more damage.

Between 11:30 p.m. that night and 3:50 a.m. the next morning, Vignon was given a combination of morphine sulfate and Ativan. Ativan is an anti-anxiety medication that may cause grogginess and may cause amnesia. Vignon identified petitioner at the emergency room as the shooter.

Police Officers Daniel Gomez and Eric Fyvie responded to a report that the shooter had last been seen in the area of Highland Avenue and 21st Streets and "E" and "D" Streets. In that area, the officers saw a man matching the description of the shooter. Fyvie got out of the car and chased the suspect on foot. Gomez backed up the police car, and he saw the suspect approach him pointing a sawed-off rifle. Gomez pulled his car out of the line of fire, got out of his car, and pointed his own rifle

at the suspect, who ran away and dropped the rifle.

The officers lost sight of the suspect, so they sealed off the block and began a search of the area. At 416 West 21st Street, the officers saw that the front door had apparently been forced open. Several officers and the SWAT team entered the house and announced their presence. Petitioner eventually came out and was arrested at 6:49 p.m. Petitioner was no longer wearing a hooded sweatshirt, but during a search of the house, the officers found a black hooded sweatshirt in the bedroom and a dark Pendleton shirt in the closet. When petitioner was booked, the officers found an unexpended .22–caliber cartridge of the same type found at the shooting scene in his pants pocket. The owner of the house testified that petitioner had not had permission to enter the house, and the clothing found there did not belong to any resident of the house.

Gomez later found two live .22–caliber cartridges at the location where he had seen the suspect point the rifle at him. Gomez was in the area of the perimeter the entire time, and he and other officers watched the area to make sure no one came into or left the area.

Officer George Gabera retrieved the rifle, a sawed-off .22–caliber rifle, from where petitioner had dropped it. The rifle was damaged; wire held the wood stock to the rifle, and the handheld portion of the stock was separated. No fingerprints were found on the rifle. The rifle had an overall length of 21 1/4 inches and a length of 11 3/4 inches from the chamber to the end of the barrel.

Officer John Echevarria saw Fyvie chasing the suspect on foot at about 6:24 p.m. The suspect held a gun and was manipulating the trigger area. The suspect put the barrel of the gun into his mouth and began pulling the trigger. Echevarria yelled at

him to not shoot himself, but the suspect ignored him and continued to pull the trigger. Echevarria then saw the suspect run down the alley. Echevarria also saw petitioner pointing the rifle in Gomez's direction.

Officer Jennifer Fawcett interviewed Vignon at the hospital on May 3. Vignon stated he was afraid of the assailant and had dropped his keys at the back of his car. The assailant demanded the keys twice. Vignon tried to leave the garage, and the assailant asked for the keys again and then shot Vignon.

### III

On April 10, 2006, petitioner, proceeding pro se, filed the pending petition for writ of habeas corpus under 28 U.S.C. § 2254, and on May 30, 2006, respondents filed their answer. On August 2, 2006, petitioner filed his traverse.[2]

The petition raises the following claims:

Ground One—"Petitioner's right to a fair trial was prejudiced by the introduction of incurably prejudicial evidence." (Petition at 5, 10–11);

Ground Two—"The evidence was insufficient to support petitioner's conviction of count two." (Petition at 5, 12–14); and

Ground Three—"The imposition of an upper term sentence violated *Blakely* [*v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004)] and violated the Sixth Amendment right to jury trial." (Petition at 6, 15–17).

2. On February 26, 2007, respondents filed a supplemental brief, claiming Ground Three does not raise a claim under *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (2007). The Court agreed, and on August 24, 2007, stayed the action to allow petitioner to exhaust a *Cunningham* claim in

### DISCUSSION

### IV

■ The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "circumscribes a federal habeas court's review of a state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 70, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Wiggins v. Smith*, 539 U.S. 510, 520, 123 S.Ct. 2527, 2534, 156 L.Ed.2d 471 (2003). As amended by AEDPA, 28 U.S.C. § 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—[¶] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or [¶] (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Further, under AEDPA, a federal court shall presume a state court's determination of factual issues is correct, and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

■ The California Supreme Court addressed petitioner's claims when it denied his petition for review without comment. *Gaston v. Palmer*, 417 F.3d 1030,

the state courts. However, on August 25, 2008, the Court determined petitioner had not been acting diligently in exhausting his state court remedies since petitioner had not yet presented a *Cunningham* claim to the California Supreme Court, and vacated the stay.

1038 (9th Cir.2005), *amended by*, 447 F.3d 1165 (9th Cir.2006), *cert. denied*, 549 U.S. 1134, 127 S.Ct. 979, 166 L.Ed.2d 742 (2007); *Hunter v. Aispuro*, 982 F.2d 344, 348 (9th Cir.1992), *cert. denied*, 510 U.S. 887, 114 S.Ct. 240, 126 L.Ed.2d 194 (1993). "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground." *Ylst v. Nunnemaker*, 501 U.S. 797, 803, 111 S.Ct. 2590, 2594, 115 L.Ed.2d 706 (1991); *Medley v. Runnels*, 506 F.3d 857, 862 (9th Cir.2007) (en banc), *cert. denied*, —— U.S. ——, 128 S.Ct. 1878, 170 L.Ed.2d 754 (2008). Thus, this Court will consider the reasoned decision of the California Court of Appeal denying petitioner's claims on the merits. *Ali v. Hickman*, 571 F.3d 902, 909 n. 5 (9th Cir.2009).

## V

■■ " 'The admission of evidence does not provide a basis for habeas relief unless it rendered the trial fundamentally unfair in violation of due process.' " *Holley v. Yarborough*, 568 F.3d 1091, 1101 (9th Cir. 2009) (citations omitted); *Gonzalez v. Knowles*, 515 F.3d 1006, 1011 (9th Cir. 2008). "Only if there are *no* permissible inferences the jury may draw from evidence can its admission violate due process." *Alcala v. Woodford*, 334 F.3d 862, 887 (9th Cir.2003) (emphasis in original); *Houston v. Roe*, 177 F.3d 901, 910 n. 6 (9th Cir.1999), *cert. denied*, 528 U.S. 1159, 120 S.Ct. 1168, 145 L.Ed.2d 1078 (2000). "Even then, the evidence must 'be of such

quality as necessarily prevents a fair trial.' " *Jammal v. Van de Kamp*, 926 F.2d 918, 920 (9th Cir.1991) (emphasis in original; citation omitted); *Randolph v. People of the State of Cal.*, 380 F.3d 1133, 1147–48 (9th Cir.2004).

In Ground One, petitioner claims his "right to a fair trial was prejudiced by the introduction of incurably prejudicial evidence" regarding gunshot residue. Petition at 5, 10–11. The California Court of Appeal made the following factual findings regarding this claim:

> Over defense objections based on lack of foundation, an expert criminalist testified that laboratory testing showed that [petitioner] had gunshot residue on his hands. However, the prosecutor was later unable to establish the chain of custody for the gunshot residue tests because the lab technician who had taken the samples from [petitioner's] hands and put them into the lab kits was unavailable. The trial court therefore excluded the criminalist's testimony and instructed the jury to disregard that testimony.[3] [Petitioner] moved for a mistrial, but the trial court denied the motion.

Lodgment no. 7 at 6 (footnote added).

The Court of Appeal then denied petitioner's claim, stating:

> A motion for mistrial may be granted only when error has occurred that has resulted in incurable prejudice. The trial court is vested with considerable dis-

---

**3.** Specifically, the trial court admonished the jury, as follows:

[T]here was a motion during the testimony of a witness, witness Kathy Wojcik, who was from the San Bernardino Sheriff's Department crime lab. It was a motion as to foundation, if I recall. That motion has been sustained. That means I have sustained that motion. [¶] And then the follow-up motion was a motion to strike that

testimony, and I am granting that motion. So I will strike the testimony of two witnesses: Officer Demoet and Kathy Wojcik. Their testimony is stricken completely. I know you heard it, but you are ordered to disregard it, and you are ordered not to consider that testimony at all in your deliberations.

RT 365:14–25.

cretion to determine whether a particular incident is incurably prejudicial.... [¶] It is presumed, in the absence of any indication in the record to the contrary, that the jury understood and followed the court's admonition to disregard the excluded testimony and that the admonition therefore cured any harm from the jury's hearing inadmissible testimony. [¶] We agree with the trial court's implied finding that the [petitioner] had not suffered incurable prejudice. Significantly, the jury found not true the enhancement allegation that the attempted murder had been willful, deliberate, and premeditated. Moreover, the evidence of [petitioner's] guilt was overwhelming. Vignon identified [petitioner] as the shooter. Several officers saw [petitioner] with the gun shortly after the shooting. Expended cartridges found at the shooting scene had been fired from the rifle [petitioner] dropped during his flight, and a similar cartridge was found in [petitioner's] pants pocket after his arrest. [Petitioner's] flight, his attempt to shoot at a police officer, his breaking into a stranger's apartment to hide, and his removal and concealment of the distinctive clothing he had been wearing were further substantial evidence of his guilt. The trial court therefore did not abuse its discretion in denying [petitioner's] motion for mistrial.

Lodgment no. 7 at 6–7 (citations omitted).

■ In *Holley*, the Ninth Circuit held that even though the trial court improperly admitted evidence that "resulted in a trial that was fundamentally unfair[,]" the petitioner was not entitled to habeas corpus relief because the Supreme Court "has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ." *Holley*, 568 F.3d at 1101 & n. 2 (citations

and footnote omitted). Thus, petitioner is not entitled to relief on this claim. *Id.*; *see also Carey v. Musladin*, 549 U.S. 70, 72, 127 S.Ct. 649, 651, 166 L.Ed.2d 482 (2006) ("[T]he state court's decision was not contrary to or an unreasonable application of clearly established federal law" when no Supreme Court holding controls a legal claim raised in state court.); *Stenson v. Lambert*, 504 F.3d 873, 881 (9th Cir. 2007) ("Where the Supreme Court has not addressed an issue in its holding, a state court adjudication of the issue not addressed by the Supreme Court cannot be contrary to, or an unreasonable application of, clearly established federal law."), *cert. denied*, — U.S. —, 129 S.Ct. 247, 172 L.Ed.2d 188 (2008).

Accordingly, the California Supreme Court's denial of Ground One was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VI

■ To review the sufficiency of evidence in a habeas corpus proceeding, the Court must determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Lewis v. Jeffers*, 497 U.S. 764, 781, 110 S.Ct. 3092, 3102–03, 111 L.Ed.2d 606 (1990) (citation omitted); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). All evidence must be considered in the light most favorable to the prosecution, *Lewis*, 497 U.S. at 782, 110 S.Ct. at 3103; *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, and if the facts support conflicting inferences, reviewing courts "must presume— even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Jackson*, 443 U.S. at 326, 99 S.Ct. at 2793; *Bruce v. Terhune*, 376 F.3d 950, 957 (9th

Cir.2004) (per curiam); *Turner v. Calderon*, 281 F.3d 851, 881–82 (9th Cir.2002). Furthermore, under AEDPA, federal courts must "apply the standards of *Jackson* with an additional layer of deference." *Juan H. v. Allen*, 408 F.3d 1262, 1274 (9th Cir.2005), *cert. denied*, 546 U.S. 1137, 126 S.Ct. 1142, 163 L.Ed.2d 1000 (2006); *Briceno v. Scribner*, 555 F.3d 1069, 1078 (9th Cir.2009). These standards are applied to the substantive elements of the criminal offenses under state law. *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16; *Chein v. Shumsky*, 373 F.3d 978, 983 (9th Cir.) (en banc), *cert. denied*, 543 U.S. 956, 125 S.Ct. 415, 160 L.Ed.2d 318 (2004).

In Ground Two, petitioner claims there was insufficient evidence for the jury to convict him of attempted carjacking because he never got the vehicle's keys or attempted to get into the vehicle. Petition at 5, 12–14. There is no merit to this claim.

■■■■ California law defines carjacking, P.C. § 215, as:

> the felonious taking of a motor vehicle in the possession of another, from his or her person or immediate presence, or from the person or immediate presence of a passenger of the motor vehicle, against his or her will and with the intent to either permanently or temporarily deprive the person in possession of the motor vehicle of his or her possession, accomplished by means of force or fear.

P.C. § 215(a)(2003); *see also People v. Gray*, 66 Cal.App.4th 973, 984, n. 5, 78 Cal.Rptr.2d 191 (1998) ("The elements of the offense of carjacking are: '1. A person had possession of a motor vehicle; [¶] 2. The motor vehicle was taken from his or her person or immediate presence, or from the person or immediate presence of a passenger of such vehicle; [¶] 3. The motor vehicle was taken against the will of the person in possession; [¶] 4. The taking was accomplished by means of force or fear; and [¶] 5. The person taking the vehicle had the intent to either permanently deprive the person in possession of the vehicle of that possession.'" (citation omitted)). For a "felonious taking" to occur, there must be asportation or movement of the vehicle. *People v. Lopez*, 31 Cal.4th 1051, 1054–55, 6 Cal.Rptr.3d 432, 434, 79 P.3d 548 (2003); *People v. Vargas*, 96 Cal. App.4th 456, 463, 116 Cal.Rptr.2d 867 (2002). When a defendant intends to commit a carjacking but is unable to move the vehicle, his "conduct is punishable as attempted carjacking." *Lopez*, 31 Cal.4th at 1063, 6 Cal.Rptr.3d at 441, 79 P.3d 548; *Vargas*, 96 Cal.App.4th at 463, 116 Cal. Rptr.2d 867. "An attempt to commit a crime consists of two elements: a specific intent to commit the crime, and a direct but ineffectual act toward its commission." P.C. § 21a (2003); *see also* P.C. § 664 (2003) ("Every person who attempts to commit any crime, but fails, or is prevented or intercepted in its preparation, shall be punished where no provision is made by law for the punishment of those attempts. . . ."). "The act must go beyond mere preparation, and it must show that the perpetrator is putting his or her plan into action, but the act need not be the last proximate or ultimate step toward commission of the substantive crime." *People v. Kipp*, 18 Cal.4th 349, 376, 75 Cal.Rptr.2d 716, 733, 956 P.2d 1169 (1998), *cert. denied*, 525 U.S. 1152, 119 S.Ct. 1055, 143 L.Ed.2d 61 (1999); *People v. Superior Court (Decker)*, 41 Cal.4th 1, 8, 58 Cal.Rptr.3d 421, 425, 157 P.3d 1017 (2007).

■■■■ The California Court of Appeal found substantial evidence supported petitioner's attempted carjacking conviction, stating:

> Here, the evidence showed that Vignon dropped his keys at the back of the car.

[Petitioner] hit the car several times while ordering Vignon to "[p]ut the keys on the top of the car." After he shot Vignon, [petitioner] did not get the keys or attempt to take the car. [Petitioner] contends this evidence was insufficient to support his conviction of attempted carjacking. [Petitioner] is wrong. The jury could reasonably conclude that [petitioner's] intention was to steal Vignon's car based on [petitioner's] repeated demands, while pointing his rifle at Vignon, that Vignon put the car keys on top of the car. Moreover, the facts that [petitioner] was on foot, followed Vignon's car when Vignon drove it into his garage, and did not demand money or other valuable[s] from Vignon provides further evidence to buttress such a conclusion. The evidence was sufficient to support [petitioner's] conviction of attempted carjacking.

Lodgment no. 7 at 9. These findings are supported by Vignon's testimony, which establishes that petitioner confronted Vignon with a gun and repeatedly demanded he put his keys on top of the car, but Vignon was unable to comply with petitioner's demands because he had dropped the keys; as a result, petitioner shot Vignon in the head. RT 95:17–104:20. The testimony of a single witness is sufficient to uphold a conviction, *Bruce*, 376 F.3d at 957–58; *United States v. Larios*, 640 F.2d 938, 940 (9th Cir.1981), and, from this evidence, the jury could reasonably infer petitioner attempted to take Vignon's car against Vignon's will, by means of force or fear, to deprive Vignon of possession of his car. *See Gray*, 66 Cal.App.4th at 985, 78 Cal.Rptr.2d 191 ("There is substantial evidence in this case that appellant threatened [the victim] with physical violence by

pretending to have a gun, and that he demanded that [the victim] give him her car keys. This evidence is sufficient to establish that appellant intended to exercise dominion and control over [the victim's] car through force or fear and, therefore, that he intended to deprive [the victim] of possession of her car.... [Therefore,] we conclude that his conviction for attempted carjacking is supported by sufficient evidence.").

For the foregoing reasons, the California Supreme Court's denial of Ground Two was neither contrary to, nor an unreasonable application of, clearly established federal law.

## VII

In Ground Three, petitioner claims "[t]he imposition of an upper term sentence" for attempted murder violated *Blakely* and the Sixth Amendment. Petition at 6, 15–17. The California Court of Appeal tersely rejected this sentencing claim, citing *People v. Black*, 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 (2005) ("*Black I*"), vacated by, *Black v. California*, 549 U.S. 1190, 127 S.Ct. 1210, 167 L.Ed.2d 36 (2007).[4] Lodgment 7 at 9–10.

 "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362–63, 147 L.Ed.2d 435 (2000). "[T]he 'statutory maximum' for *Apprendi* purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.*"

---

4. Although the Supreme Court overruled *Black I* in *Cunningham,* this does not benefit petitioner, as discussed herein.

*Blakely,* 542 U.S. at 303, 124 S.Ct. at 2537 (emphasis in original). Thus, when petitioner was convicted, the relevant statutory maximum under California's Determinate Sentencing Law was the middle term, not the upper term.[5] *Cunningham,* 549 U.S. at 288, 127 S.Ct. at 868.

■■■■ In relying solely on *Black I* to reject petitioner's challenge to the imposition of an upper-term sentence for his attempted murder conviction, the California Court of Appeal's decision was contrary to clearly established federal law. *Butler,* 528 F.3d at 640–41. Having reached this conclusion, the Court must now resolve petitioner's claim *de novo,* "without the deference AEDPA otherwise requires." *Panetti v. Quarterman,* 551 U.S. 930, 953, 127 S.Ct. 2842, 2858, 168 L.Ed.2d 662 (2007); *Frantz v. Hazey,* 533 F.3d 724, 735–37 (9th Cir.2008) (en banc); *Butler,* 528 F.3d at 641. In conducting this review, petitioner is entitled to habeas relief only if the sentencing error in his case was not harmless. *Washington v. Recuenco,* 548 U.S. 212, 222, 126 S.Ct. 2546, 2553, 165 L.Ed.2d 466 (2006); *Butler,* 528 F.3d at 648; *see also Medina v. Hornung,* 386 F.3d 872, 877 (9th Cir.2004) ("[E]ven if a state court's decision was contrary to, or an unreasonable application of, clearly established federal law, habeas relief may still be denied absent a showing of prejudice."). An error is harmless if it did not have a " 'substantial and injurious effect or influence' " on petitioner's sentence. *Brecht v. Abrahamson,* 507 U.S.

619, 623, 113 S.Ct. 1710, 1714, 123 L.Ed.2d 353 (1993) (citation omitted); *Butler,* 528 F.3d at 648.

■■■■ "[U]nder California law, only one aggravating factor is necessary to set the upper term as the maximum sentence...." *Butler,* 528 F.3d at 643; *People v. Black,* 41 Cal.4th 799, 813, 62 Cal. Rptr.3d 569, 579, 161 P.3d 1130 (2007) *(Black II ), cert. denied,* 552 U.S. 1144, 128 S.Ct. 1063, 169 L.Ed.2d 813 (2008); *People v. Osband,* 13 Cal.4th 622, 728, 55 Cal. Rptr.2d 26, 95, 919 P.2d 640 (1996), *cert. denied,* 519 U.S. 1061, 117 S.Ct. 696, 136 L.Ed.2d 618 (1997). "For that reason, if at least one of the aggravating factors on which the judge relied in sentencing [petitioner] was established in a manner consistent with the Sixth Amendment, [petitioner's] sentence does not violate the Constitution." *Butler,* 528 F.3d at 643; *Black II,* 41 Cal.4th at 813, 62 Cal.Rptr.3d at 579, 161 P.3d 1130. That is, "[a]ny ... error ... will be harmless if it is not prejudicial as to just one of the aggravating factors at issue." *Butler,* 528 F.3d at 648.

■■■ Here, the trial court, in imposing an upper term sentence on the attempted murder conviction, found numerous factors in aggravation, including the factors of "great violence, disclosing [a] high degree of cruelty, viciousness, and callousness[,]" and "violent conduct which indicates a serious danger to society." [6] RT 541:13–542:6;

---

**5.** To the extent respondents contend *Blakely* and *Cunningham* cannot be retroactively applied to petitioner's claim, Supplemental Brief at 5:22–12:6, their argument is without merit. Since petitioner's judgment did not become final until after *Blakely* was decided, *Blakely* applies to petitioner's sentence, and *Cunningham* "did not announce a new rule of constitutional law and may be applied retroactively on collateral review." *Butler v. Curry,* 528 F.3d 624, 639 (9th Cir.), *cert. de-*

*nied,* —— U.S. ——, 129 S.Ct. 767, 172 L.Ed.2d 763 (2008); *see also In re Gomez,* 45 Cal.4th 650, 660, 88 Cal.Rptr.3d 177, 185, 199 P.3d 574 (2009) ("*Cunningham* applies retroactively to any case in which the judgment was not final at the time the decision in *Blakely* was issued.").

**6.** The trial court also found the following other factors in aggravation: (a) "the victim was particularly vulnerable" since "[h] e was

*see also* Cal. Rule of Court 4.421(a)(1) (aggravating factors include that "[t]he crime involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness"), (b)(1) (aggravating factors include that "[t]he defendant has engaged in violent conduct that indicates a serious danger to society") (2003). The evidence supporting these factors is uncontroverted and overwhelming since the jury specifically found petitioner inflicted great bodily injury on Vignon in attempting to murder him. CT 194. Under these circumstances, any possible Sixth Amendment error did not have a substantial and injurious effect or influence on petitioner's sentence, and petitioner is not entitled to habeas corpus relief. *Brecht,* 507 U.S. at 623, 113 S.Ct. at 1714; *Butler,* 528 F.3d at 648; *Castillo v. Clark,* 610 F.Supp.2d 1084, 1125 (C.D.Cal.2009); *Flores v. Hickman,* 533 F.Supp.2d 1068, 1081 (C.D.Cal.2008).

Therefore, the California Supreme Court's denial of Ground Three was neither contrary to, nor an unreasonable application of, clearly established federal law.

### RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; and (3) directing that Judgment be entered denying the petition and dismissing the action with prejudice.

### JUDGMENT

Pursuant to the Order of the Court adopting the findings, conclusions, and recommendations of United States Magistrate Judge Rosalyn M. Chapman,

IT IS ADJUDGED that the petition for writ of habeas corpus is denied and the action is dismissed with prejudice.

trapped in a narrow, one[-] car garage"; (b) "the manner in which the crime was carried out indicates planning, waiting in the alley, armed with a sawed-off shotgun, concealed on his person"; (c) petitioner's "prior convictions are of increasing seriousness"; (d) petitioner "was on probation when the crimes were committed"; and (e) petitioner's "prior performance on probation was unsatisfactory." RT 541:13–542:6; *see also* Cal. Rule of Court 4.421(a)(3), (8), (b)(2), (4), (5)(2003).